# United States Court of Appeals
## for the Second Circuit

_____

August Term 2020

(Argued: December 16, 2020     Decided: February 9, 2022)

No. 19-3237

_____

OLUKAYODE DAVID OJO, AKA DAVID OLUKAYODE OJO, AKA OLUKAYODE OJO,

*Petitioner*,

— v. —

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,*

*Respondent*.

_____

Before:      CHIN, BIANCO, AND MENASHI, *Circuit Judges*.

Olukayode David Ojo, a native of Nigeria, seeks review of a September 27, 2019 decision of the Board of Immigration Appeals affirming an April 15, 2019 decision of an immigration judge, which denied asylum, withholding of removal, and relief under the Convention Against Torture. *See In re Olukayode David Ojo*, No. A088-444-553 (B.I.A. Sept. 27, 2019), *aff'g* No. A088-444-553 (Immigr. Ct. N.Y.C. Apr. 15, 2019).

_____

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), United States Attorney General Merrick B. Garland is automatically substituted for former Attorney General William P. Barr as Respondent.

We grant Ojo's petition for review and vacate the agency's denial of Ojo's claims for asylum, withholding of removal, and CAT protection because those determinations were permeated with several legal and procedural errors. First, insofar as Ojo's request for asylum was rejected as untimely, the agency applied the wrong legal standard to his claim of changed circumstances and the agency's alternative discretionary determination failed to indicate the requisite examination of the totality of the circumstances. Second, with respect to Ojo's application for withholding of removal, the agency erred when it incorrectly categorized his federal conviction for wire fraud and identity theft as "crimes against persons," and concluded that they fell within the ambit of "particularly serious crimes" without evaluating the elements of the offenses as required under the agency's own precedent. Finally, with respect to his CAT claim, the agency erred in concluding that Ojo lacked a reasonable fear of future persecution or torture in Nigeria due to his status as a criminal deportee without even addressing the declaration of his expert supporting his claim.

Accordingly, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this opinion.

JUDGE MENASHI dissents in a separate opinion.

BENJAMIN L. NELSON, Monroe County Public Defender's Office, Rochester, New York, *for Petitioner*.

ARIC A. ANDERSON, TRIAL ATTORNEY (Holly M. Smith, Senior Litigation Counsel, *on the brief*), *for* Brian M. Boynton, Acting Assistant Attorney General, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

_____

JOSEPH F. BIANCO, *Circuit Judge*:

Petitioner Olukayode David Ojo, a native of Nigeria, seeks review of a September 27, 2019 decision of the Board of Immigration Appeals (the "BIA") affirming an April 15, 2019 decision of an immigration judge (the "IJ", together with the BIA, the "agency"), which denied Ojo's claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See In re Olukayode David Ojo*, No. A088-444-553 (B.I.A. Sept. 27, 2019), *aff'g* No. A088-444-553 (Immigr. Ct. N.Y.C. Apr. 15, 2019).

We grant Ojo's petition for review and vacate the agency's denial of Ojo's claims for asylum, withholding of removal, and CAT protection because those determinations were permeated with several legal and procedural errors. First, insofar as Ojo's request for asylum was rejected as untimely, the agency applied the wrong legal standard to his claim of changed circumstances and the agency's alternative discretionary determination failed to indicate the requisite examination of the totality of the circumstances. Second, with respect to Ojo's application for withholding of removal, the agency erred when it incorrectly categorized his federal conviction for wire fraud and identity theft as "crimes against persons," and concluded that they fell within the ambit of "particularly serious crimes"

3

without evaluating the elements of the offenses as required under the agency's own precedent. Finally, with respect to his CAT claim, the agency erred in concluding that Ojo lacked a reasonable fear of future persecution or torture in Nigeria due to his status as a criminal deportee without even addressing the declaration of his expert supporting his claim.

Notwithstanding these errors, the government urges this Court to deny review in deference to the broad discretion afforded to immigration courts in these administrative determinations. That broad discretion, however, does not allow an agency to apply an improper legal standard, ignore its own precedent, and fail to assess material expert evidence in support of one of the claims. Such fundamental defects in the agency's reasoning in this case deprived this Court of the ability to conduct meaningful judicial review of the agency's exercise of its discretion, and they do not allow us to reasonably discern and evaluate the reasons for the agency's decision. Moreover, when a court speculates as to how the agency would have decided the claim if it had operated under the correct legal standard or assumes that it considered and rejected key evidence on some unknown ground, it improperly usurps the adjudicatory role entrusted to the agency in the first instance by Congress and also subjects one of the most important decisions in our

legal system – namely, whether an individual has the right to remain in the United States – to judicial guesswork. Our prior precedents do not support such an approach and, instead, require remand to allow the agency to assess the factual record under the proper legal standard and sufficiently articulate the reasons for its discretionary decision. In doing so here, we express no view as to how the agency should resolve these issues on the merits as they relate to Ojo's claims.

Accordingly, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED to the BIA.

## I. BACKGROUND

Ojo, a native and citizen of Nigeria, entered the United States on October 4, 2010, as a non-immigrant visitor for pleasure with authorization to remain for six months, but never left.

### A. Criminal Proceedings

In February 2014, Ojo was convicted of (1) conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, and (2) conspiracy to knowingly possess, with intent to use unlawfully, identification documents, in violation of 18 U.S.C. § 1028(a)(3), (b)(2)(B), (c)(3)(A), (c)(3)(B), (f).[1] After early release before the

---

[1] This Court affirmed Petitioner's conviction in November 2015.

completion of his thirty-seven-month sentence, he was arrested and detained by Immigration and Customs Enforcement in connection with these removal proceedings. In March 2014, the Department of Homeland Security charged Ojo with removability under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), as an alien who, after admission, remained in the United States for longer than permitted.

**B.    Application for Immigration Relief**

In April 2014, Ojo filed an application for asylum, withholding of removal, and protection under the CAT. Ojo claimed he was afraid to return to Nigeria because, as a Christian, he would face persecution and/or torture from Boko Haram, and as a criminal deportee, he would face persecution and/or torture from the police and other individuals. Ojo also asserted that his computer business in Nigeria would suffer on account of his conviction.

Ojo participated in a number of hearings in immigration court throughout 2014. He supplemented his application for relief with various exhibits to support his assertion that, if denied relief by the agency, he would face persecution and torture in Nigeria based on his status as a criminal deportee. In particular, through his counsel, Ojo submitted the sworn declarations of two of his sisters that

6

articulated their concern, based upon conversations with others in the community, that Ojo would be imprisoned and subject to torture in Nigeria as a criminal deportee. In addition, Ojo provided news articles corroborating the practice of Nigerian officials to detain criminal deportees. Moreover, Ojo submitted the sworn Declaration of Basil Ugochukwu (the "Ugochukwu Declaration"). Based upon his *curriculum vitae*, Dr. Ugochukwu is a Nigerian human rights lawyer and lecturer who is an expert on the Nigerian justice system. The Ugochukwu Declaration, after setting forth Dr. Ugochukwu's qualifications and experience with the Nigerian justice system, describes the mistreatment of criminal deportees when they return to Nigeria. Specifically, Dr. Ugochukwu opined that Ojo "will be targeted by the Nigerian police and prison officials for particularly severe abuse because he will be a criminal deportee." Cert. Admin. R. at 859. He further explained that "there is a high probability that [Ojo] will be held and detained indefinitely by the Nigerian police and prison system" where he "will face deplorable and life-threatening conditions." Cert. Admin. R. at 859.

7

## C.     The IJ's April 15, 2019 Decision

After hearings at which Ojo testified, the IJ ruled on the merits of his claims for immigration relief.  The IJ found that Ojo was credible in his testimony, but denied all forms of immigration relief requested.

First, with respect to Ojo's asylum claim, the IJ determined that Ojo did not merit an exception to the one-year bar because his purported "changed and extraordinary circumstances" were "intentionally created by him through his own action or inaction" in that he caused his criminal conviction to occur.  Cert. Admin. R. at 49 (citing 8 C.F.R. § 1208.4(a)(5)).  The IJ also concluded that Ojo's fear of Boko Haram did not increase as a result of Boko Haram's designation as a terrorist organization, and thus he could not show changed circumstances as to his religious persecution claim.  Cert. Admin. R. at 49.  As an alternative holding, while the IJ found Ojo's testimony credible, the IJ refused to exercise his discretion because Ojo's crime involved moral turpitude and denied his asylum application.

Second, the IJ held that Ojo was convicted of a "particularly serious crime," and thus ineligible for withholding of removal, because his conviction involved "a crime against persons, which brings it into the ambit of a particularly serious crime."  Cert. Admin. R. at 50.  The IJ noted the facts of Ojo's particular crimes –

namely, the number of victims and total loss – supported the ultimate determination that "his conviction [for] a particularly serious crime" disqualified him from withholding of removal. Cert. Admin. R. at 50–51. In fact, as discussed further below, Ojo was not *per se* convicted of a particularly serious crime. Cert. Admin. R. at 50.

Finally, the IJ denied CAT protection, finding that Ojo failed to meet his burden of proof to demonstrate that he would more likely than not be tortured in Nigeria. After noting that the IJ must consider all available evidence, the IJ relied upon the International Religious Freedom Report and the Department of State Country Report to reject his CAT claim based on his religion. With respect to his claim that he would be arrested, detained, and tortured in Nigeria as a criminal deportee, the IJ referenced Ojo's testimony about another criminal deportee being tortured in Nigeria and found "[i]t is speculative that the same would happen to [Ojo]." Cert. Admin. R. at 52. Thus, without addressing any other evidence in the record on this issue (including the Ugochukwu Declaration), the IJ concluded that Ojo "failed to meet his high burden of proof to show that he would be tortured in Nigeria by or with government acquiescence." Cert. Admin. R. at 52.

## D. The BIA's September 27, 2019 Decision

Petitioner, appearing *pro se*, appealed to the BIA. He argued, *inter alia*, the following: (1) the "IJ's decision was based on the erroneous denial of the exception to the one-year filing deadline"; (2) the IJ erred in determining his conviction was "particularly serious" barring withholding of removal; and (3) the IJ overlooked the Ugochukwu Declaration. Cert. Admin. R. at 41–42.

In September 2019, the BIA dismissed Ojo's appeal.[2] The BIA affirmed the denial of asylum on the two alternative grounds found by the IJ. In particular, the BIA concluded that Ojo's arrest and subsequent detention could not constitute changed or extraordinary circumstances "because these events were caused by his own criminal conduct." Cert. Admin. R. at 5 (quoting 8 C.F.R. § 1208.4(a)(4)–(5) for the proposition that the burden rests with the applicant to establish that the circumstances were not created by him). Moreover, the BIA observed that the applicant for asylum bears the burden of establishing that a favorable exercise of discretion is warranted and that Ojo did not "meaningfully challenge[]" the IJ's discretionary denial. Cert. Admin. R. at 5. As to the withholding of removal, the

---

[2] Although the September 2019 decision by the BIA also addresses Ojo's arguments in connection with a prior IJ's July 17, 2018 decision finding him removable, this opinion confines its summary of the BIA's decision to the rulings and findings relevant to the instant appeal.

BIA found that the IJ "examined the individualized characteristics of [Ojo's] offenses and determined that – based on the nature of the convictions and the underlying circumstances of the case – [Ojo] had been convicted of a particularly serious crime," Cert. Admin. R. at 6 (observing that the IJ accounted for the type of crimes, the number of victims, and the restitution owed), but did not comment on the categorization of his conviction as including a crime against persons. Finally, with respect to the CAT claim, the BIA stated that "the record reflects that the Immigration Judge used the correct standard of review, reviewed the entire record, and did not clearly err in making his determination that it is not more likely than [not] that [Ojo] would be tortured if removed to Nigeria." Cert. Admin. R. at 7.

This appeal followed.

## II.    DISCUSSION

### A.    The Standard of Review

The standards of review are well established. Where, as here, "the BIA adopt[s] and affirm[s] the IJ's decision, we review the two decisions in tandem." *Ruqiang Yu v. Holder*, 693 F.3d 294, 297 (2d Cir. 2012). We review all questions of law, including the application of law to facts, *de novo*. *Scarlett v. Barr*, 957 F.3d 316,

11

326 (2d. Cir. 2020). In contrast, we apply the deferential substantial evidence standard of review to the agency's factual findings, *Islam v. Gonzales*, 469 F.3d 53, 55 (2d Cir. 2006); that is, we uphold the agency's factual findings if "they are supported by 'reasonable, substantial and probative evidence in the record,'" *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009) (quoting *Lin Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 116 (2d Cir. 2007)). That standard requires "a certain minimum level of analysis from the IJ and BIA, as well as some indication that the IJ considered material evidence supporting a petitioner's claim." *Manning v. Barr*, 954 F.3d 477, 484 (2d Cir. 2020) (quoting *Castro v. Holder*, 597 F.3d 93, 99 (2d Cir. 2010)). "This Court will vacate and remand for new findings . . . if the agency's reasoning or its factfinding process was sufficiently flawed." *Id.* (internal quotation marks omitted); *see also Beskovic v. Gonzales*, 467 F.3d 223, 225 (2d Cir. 2006) ("When the BIA or IJ has failed to apply the law correctly, we retain substantial authority to vacate BIA or IJ decisions and remand for consideration or rehearing." (internal quotation marks omitted)). In conducting this analysis, we recognize that "a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may be reasonably discerned.'" *Garland v. Ming Dai*,

12

141 S. Ct. 1669, 1679 (2021) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

### B.    Exhaustion

As a threshold matter, although the government concedes that Ojo adequately raised the argument that is the subject of this appeal with respect to his CAT claim (*i.e.*, the failure to consider and address the Ugochukwu Declaration), the government contends that Ojo failed to exhaust the following arguments that he has raised with respect to his other claims: (1) Ojo's argument that his conviction was a changed circumstance warranting excusal of the one-year bar to the filing of his asylum claim; (2) Ojo's challenge to the IJ's refusal to exercise discretion as to his asylum claim; and (3) Ojo's assertion that the agency erred when it failed to analyze the elements of his offenses before reviewing the facts and circumstances particular to his conviction.  We disagree.

Before a petitioner can seek judicial review of his removal decision, the INA requires that he exhaust all administrative remedies available to him.  8 U.S.C. § 1252(d) ("A court may review a final order of removal only if . . . (1) the alien has exhausted all administrative remedies available to the alien as of right . . . .").  We have emphasized that "we construe 'generously'" an applicant's *pro se* brief to the

agency. *Steevenez v. Gonzales*, 476 F.3d 114, 118 (2d Cir. 2007). Moreover, "we have never held that a petitioner is limited to the exact contours of his argument below"; rather, the exhaustion requirement is satisfied when the issue raised on appeal is either a "specific, subsidiary legal argument[]" or "an extension of [an] argument . . . raised directly before the BIA." *Gill v. I.N.S.*, 420 F.3d 82, 86 (2d Cir. 2005) (internal quotation marks omitted); *accord Lin Zhong*, 480 F.3d at 122. In addition, where the BIA addressed a claim not raised on appeal, the claim may be deemed exhausted and reviewed by this Court. *See Xian Tuan Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 296–97 (2d Cir. 2006); *see also Gashi v. Holder*, 702 F.3d 130, 136 (2d Cir. 2012) (rejecting the government's argument that the applicant forfeited a particular claim because he "did not explicitly raise this point in his brief to the BIA" and "the BIA chose nonetheless to address the issue in its decision and relied on an incorrect legal standard in making its decision").

Before the BIA, Ojo contended that the IJ erred when denying the exception to the one-year deadline for his asylum claim and when finding Ojo's conviction to be particularly serious as to his application for withholding of removal. Although Ojo did not explicitly note that he was challenging the discretionary denial of asylum, he did raise a number of challenges to the IJ's determinations

14

surrounding his convictions and also recounted how the IJ ignored favorable evidence. Thus, the challenges that he raises now are both "specific, subsidiary legal arguments" and "extension[s] of argument[s] . . . raised directly before the BIA." *Gill*, 420 F.3d at 86 (internal quotation marks omitted). Moreover, the BIA actually reviewed and decided the various components of the IJ's decision that cover the specific challenges being raised on this appeal, including the "changed" circumstance analysis, the discretionary denial of asylum, and the application of the "particularly serious crime" standard. *See* Cert. Admin. R. at 5–6 ("Contrary to the respondent's arguments on appeal, we agree with the Immigration Judge's determination that his arrest and subsequent detention do not constitute *changed* or extraordinary circumstances . . . . We also affirm the third Immigration Judge's decision to deny the respondent's application for asylum in the exercise of discretion . . . . [T]he Immigration Judge examined the individualized characteristics of the respondent's offenses and determined that – based on the nature of the convictions and the underlying circumstances of the case – the

respondent had been convicted of a particularly serious crime." (emphasis added)).[3]

Under these circumstances, especially in light of Ojo's *pro se* status before the BIA and the agency's adjudication of the claims at issue here, we find that the record is sufficient to demonstrate exhaustion below of the arguments raised in this appeal. *See Adams v. Holder*, 692 F.3d 91, 96 n.2 (2d Cir. 2012) (rejecting the government's argument that the *pro se* applicant failed to exhaust an issue before the BIA where the applicant "implicitly made the point" through another argument and the BIA decided the issue).

**C.    Asylum**

"To establish eligibility for asylum, a petitioner must show that he satisfies the statutory definition of a 'refugee,' *i.e.*, that he has suffered past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or that he has a well-founded fear of future persecution on one of these grounds." *Wu Zheng Huang v. I.N.S.*, 436 F.3d 89, 94 (2d Cir. 2006).  Under

---

[3] Even though the BIA affirmed the discretionary denial of asylum based on its view that Ojo had not "*meaningfully* challenged" that decision, Cert. Admin. R. at 5 (emphasis added), we conclude that Ojo's discussion in his Notice of Appeal regarding favorable evidence that was ignored by the IJ as to his conviction and the circumstances in Nigeria was a meaningful challenge to all of the denied grounds for relief, including the discretionary denial.

8 U.S.C. § 1158(a)(2)(B), an alien is ineligible for asylum "unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." An application submitted outside the deadline may be considered, however, "if the alien demonstrates . . . *either* the existence of changed circumstances which materially affect the applicant's eligibility for asylum *or* extraordinary circumstances relating to the delay," 8 U.S.C. § 1158(a)(2)(D) (emphasis added), and the application is filed within a reasonable time period given the changed or extraordinary circumstances, 8 C.F.R. § 1208.4(a)(4)(ii), (5). Our jurisdiction to review findings regarding the timeliness of an asylum application and the circumstances excusing untimeliness is limited to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); *see id.* § 1158(a)(3).

Here, Ojo contends that the agency committed legal error by incorporating a requirement for demonstrating "extraordinary circumstances" for the delay in filing – namely, that the delay was not created by him – to the separate standard for "changed circumstances" affecting his eligibility for asylum. Ojo had independently asserted, apart from any explanation for the delay in filing, that "changed circumstances" existed based upon his new status as a criminal deportee

17

and Boko Haram's increased violence against Christians like himself. We have jurisdiction to consider this question of law, *Khan v. Gonzales*, 495 F.3d 31, 35 (2d Cir. 2007), and we agree with Ojo that the agency applied the incorrect legal standard in assessing his argument regarding changed circumstances.

Section 1208.4(a)(5) of the agency's regulations provides that, in the context of demonstrating *extraordinary circumstances* for the delay, "[t]he burden of proof is on the applicant to establish . . . that the circumstances were not intentionally created by the alien through his or her own action or inaction." 8 C.F.R. § 1208.4(a)(5). However, no such requirement exists for the alternative grounds of demonstrating *changed circumstances* affecting his eligibility for asylum. *See id.* § 1208.4(a)(4) (changed circumstances). Notwithstanding this clear distinction in the applicable legal standard, the IJ found that Ojo could not meet his burden under the exception for either changed or extraordinary circumstances because he caused his criminal conviction to occur. This was clear error as it related to the "changed circumstances" standard.[4] The BIA repeated that same error in

---

[4] The government argues that the IJ's late-filing determination could still be upheld because he "did not rely on [the 'intentionally created'] language when he rejected Ojo's claim that an increase in violence in Nigeria constituted changed circumstances." Appellee's Br. at 24. However, the IJ *did* rely upon this erroneous, non-existent requirement in rejecting Ojo's other argument (separate from the alleged increased

18

upholding the IJ's decision.  *See* Cert. Admin. R. at 5 ("Contrary to the respondent's arguments on appeal, we agree with the Immigration Judge's determination that his arrest and subsequent detention do not constitute changed or extraordinary circumstances because these events were caused by his own criminal conduct.").

The government does not dispute that, unlike the "extraordinary circumstances" standard, the applicable regulation does not preclude consideration of "changed circumstances" that arise from the applicant's own conduct.  *See* Appellee's Br. at 23–24 ("Respondent does not disagree that the regulatory language underlying Ojo's argument – 'that the circumstances were not intentionally created by the alien through his or her own action or inaction' – is included in 8 C.F.R. § 1208.4(a)(5) and not in 8 C.F.R. § 1208.4(a)(4).").  Indeed, the government acknowledges that the BIA's decision "might have been a little clearer" regarding the applicable standard, but nevertheless asserts that "[t]he Board's decision is clear enough."  *Id*. at 24.  The only thing that is clear to this Court is that the BIA's decision is based on the wrong legal standard for changed circumstances and the only reason given by the BIA for sustaining the IJ's decision

---

violence against Christians by Boko Haram) that his criminal conviction and targeting as a criminal deportee constituted "changed circumstances."  Therefore, the legal error was the sole basis for rejecting at least one of his independent grounds for "changed circumstances."

– that is, that the applicant caused his changed circumstances – does not preclude consideration of such circumstances. Accordingly, the "changed circumstances" analysis contains an error of law that cannot form the basis of the denial of Ojo's asylum claim on timeliness grounds.

To be sure, we recognize that criminal conduct is certainly material to the merits of the asylum determination itself. *See Wu Zheng Huang*, 436 F.3d at 98. However, we more narrowly hold that the fact that the changed circumstances were created by the applicant's conduct does not act as an automatic bar to consideration of those changed circumstances by the BIA on the merits. Notwithstanding the agency error, the dissent argues that Ojo is still ineligible because "criminal deportees are not a social group entitled to asylum," *post* at 5 n.1, 9,[5] and that such additional reasoning "is already reasonably discernable from the agency's opinions," *id*. at 8 (internal quotation marks omitted). The *sole* ground, however, provided by the agency for finding no "changed circumstances" that could affect eligibility was that Ojo caused the changed circumstances. The government does not even raise this alternative ground on appeal. In short, we

---

[5] The dissent's observation that "criminal deportees are not a social group entitled to asylum" is, of course, true, and we do not suggest otherwise. At the same time, as we discuss below, it is fundamental that not all convictions preclude relief.

20

respectfully disagree that any other reason for rejecting the asylum claim can be reasonably discerned from this record based upon the agency's own explanation of its decision.[6] Under well-established law, Ojo has a right to know why his claim was barred by the agency as untimely, as opposed to this Court substituting its own alternative ground. Therefore, we conclude that this legal error requires remand.

We recognize that remand is not required if it would be futile such as where the agency provided alternative grounds for denying relief uninfected by the error, the error is tangential to the ultimate ruling, or overwhelming untainted evidence supported the finding. *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 338 (2d Cir. 2006). However, we decline to uphold the agency's decision on a separate legal ground not relied upon by the agency (nor argued by the government on appeal), especially where the BIA also failed to address the IJ's ruling regarding "changed circumstances" on the different ground related to Boko Haram. *See Karaj v. Gonzales*, 462 F.3d 113, 119 (2d Cir. 2006) ("[R]espondent argues [in the alternative] that the incidents to which [the petitioners] testified are not

---

[6] Moreover, the BIA entirely failed to address Ojo's separate argument that he showed changed circumstances related to his claim that Boko Haram would target him as a Christian.

21

persecution as a matter of law. We, however, must review the findings the IJ

actually made and not seek out bases for denying review on which the IJ did not

rely."); *Passi v. Mukasey*, 535 F.3d 98, 100 (2d Cir. 2008) ("[O]ur review is confined

to those reasons for denying relief that were adopted by the BIA.").

The government argues that remand is still unwarranted because the

agency's alternative denial of asylum as a matter of discretion is independently

dispositive. After an applicant demonstrates eligibility for asylum, "the decision

whether to grant a particular application is . . . within the discretion of the Attorney

General." *Diallo v. I.N.S.*, 232 F.3d 279, 284 (2d Cir. 2000) (internal quotation marks

omitted). However, we have similar concerns regarding the IJ's discretionary

denial because there is no indication that the IJ examined "the totality of the

circumstances" or balanced "favorable and adverse factors." *Wu Zheng Huang*, 436

F.3d at 98 ("[T]he *danger of persecution* will outweigh all but the most egregious

adverse factors. . . . Other favorable considerations include general humanitarian

reasons, . . . such as his or her age, health, or family ties." (internal quotation marks

omitted)). Although we are deferential in our review of an agency decision, the

agency abuses its discretion when it fails to conduct the requisite legal analysis

and instead provides a conclusory statement. *See Ke Zhen Zhao v. U.S. Dep't of Just.*, 265 F.3d 83, 93 (2d Cir. 2001).

On its face, the April 15, 2019 decision reflects that the only factor the IJ considered was Ojo's criminal history. As noted above, the IJ certainly may consider criminal convictions as one factor, *Wu Zheng Huang*, 436 F.3d at 100 n.12, and there is no need to evaluate every factor enunciated by case law, *see, e.g.*, *Zuh v. Mukasey*, 547 F.3d 504, 510–11 (4th Cir. 2008); but, even when an applicant has been convicted of a crime involving moral turpitude, we still require a "balancing of the equities for and against a petitioner," *Wu Zheng Huang*, 436 F.3d at 100. Not only did the IJ not mention any factor other than the criminal conviction, the IJ did not reference the legal standard requiring consideration of mitigating factors. In fact, the IJ found Ojo's testimony to be credible, but also did not discuss that factor in its discretionary denial. In short, we have emphasized that "[d]espite our generally deferential review of IJ and BIA opinions, we require a certain minimum level of analysis from the IJ and BIA opinions denying asylum, and indeed must require such if judicial review is to be meaningful." *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005). The agency's analysis for the discretionary denial fails to meet that minimum level of analysis as it relates to the legal standard and

consideration of the relevant factors.[7] *See Wu Zheng Huang*, 436 F.3d at 99 (vacating IJ's denial of asylum and remanding because the IJ "entirely failed to undertake the examination of the totality of the circumstances as mandated by the case law"). The above-referenced precedent holds that the failure to provide sufficient reasoning under the proper legal standard is an abuse of discretion. And, because the failure to provide sufficient reasoning is contrary to our well-settled precedent articulated in numerous other published decisions such as *Wu Zheng Huang*, *Poradisova*, and *Ke Zhen Zhao*, it is also "manifestly contrary to the law." 8 U.S.C. § 1252(b)(4)(D).[8] In any event, remand is independently required because the procedural error identified with respect to the withholding of removal claim (discussed *infra*) – that is, the analysis regarding Ojo's conviction constituting a

---

[7] In addition to the danger of persecution, Ojo raised a series of mitigating factors to support the granting of asylum in the exercise of discretion, including the following: (1) he "came to [the United States] to visit his sisters"; (2) "[u]pon arrival, he began volunteering at his sister Sandra's food bank"; (3) "[h]e has been a reliable family member and church volunteer"; (4) "Mr. Ojo does not represent a danger to the community" because he "has never been charged with any violent offenses and there is nothing in his record to indicate a history of violence"; and (5) "while Mr. Ojo was in detention, he earned his GED and various other certificates in an effort to better himself." Cert. Admin. R. at 1296 (citations omitted).

[8] The dissent's contention, *post* at 12 n.5, that there is some category of cases in which an agency could abuse its discretion by providing insufficient reasoning (or perhaps no reasoning at all), but still have its decision upheld because it is somehow not also "contrary to the law," is legally untenable under our case authority.

24

"particularly serious crime" – could, depending upon how that issue is resolved on remand, impact the discretionary analysis regarding the "changed circumstances" on the asylum claim.

In sum, with respect to the denial of asylum on either independent ground – the one-year statutory bar or the IJ's exercise of discretion – we direct the agency on remand to fully consider the arguments and evidence under the proper legal standards and explain its reasoning under such standards.

## D.    Withholding of Removal

Ojo argues that the agency failed to follow its own precedent regarding the legal framework for determining whether his federal convictions were "particularly serious crimes" that barred him from withholding of removal. We agree.

A noncitizen is barred from withholding of removal if he has "been convicted by a final judgment of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B)(ii). Ojo's conviction was not *per se* particularly serious because he was sentenced to less than five years' imprisonment. *Id.* § 1231(b)(3)(B)(iv). If the crime is not *per se* particularly serious, the agency "examine[s] the nature of the conviction, the type of sentence imposed, and the circumstances and underlying

25

facts of the conviction" to determine if it is particularly serious. *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007); *see also Nethagani v. Mukasey*, 532 F.3d 150, 154 n.1, 155 (2d Cir. 2008) (discussing the factors to be considered and accepting the BIA's interpretation that a particularly serious crime determination no longer requires a separate danger to the community analysis).

In making that assessment, the agency's own precedent requires a two-step analysis. First, the adjudicator considers whether the elements of the offense "potentially bring the crime into a category of particularly serious crimes." *In re N-A-M-*, 24 I. & N. Dec. at 342. "[C]rimes against persons are more likely to be particularly serious than are crimes against property." *Nethagani*, 532 F.3d at 155. "If the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence, and the alien would not be barred from a grant of withholding of removal." *In re N-A-M-*, 24 I. & N. Dec. at 342. However, "once the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information." *Id.* The ultimate decision to

categorize an offense as a particularly serious crime after weighing relevant facts is a matter of discretion. However, contrary to the government's assertions, whether the IJ applied the correct legal standard in making his determination is a matter of law, which we have held is reviewable by this Court. *See Nethagani*, 532 F.3d at 154–55.

We conclude that the agency failed to apply the correct legal standard at step one of the analysis in its determination that Ojo's conviction involved a particularly serious crime. More specifically, the IJ's step-one analysis, at best, was limited to its conclusion that "[Ojo] was alleged to have committed a crime against persons, which brings it into the ambit of a particularly serious crime." Cert. Admin. R. at 50. However, it is axiomatic that conspiracy to commit wire fraud and identity theft are "crimes against property," not "crimes against persons." As defined by Black's Law Dictionary, "crimes against persons" constitute "[a] category of criminal offenses in which the perpetrator uses or threatens to use force," such as "murder, rape, aggravated assault, and robbery," while "crimes against property" fall within "[a] category of criminal offenses in which the perpetrator seeks to derive an unlawful benefit from – or do damage to – another's

property without the use or threat of force," such as "burglary, theft, and arson."[9] Black's Law Dictionary (11th ed. 2019). Ojo's crimes of conspiracy to commit wire fraud and conspiracy to possess false identification documents do not have as an element use or threatened use of force. *See* 18 U.S.C. §§ 1028(a)(3), 1343. The government suggests that "it is not clear that fraud and identity theft offenses cannot fairly be called crimes against persons" based upon the fact that identity theft is a threat to the community. Appellee's Br. at 33. That definition of a "crime against persons" is inconsistent with the plain meaning of that term, as well as the use of that term by courts, in every other context. S*ee, e.g., Zhong Qin Yang v. Holder*, 570 F. App'x 381, 384–85 (5th Cir. 2014) (per curiam) (observing that conspiracy to commit access device fraud and aggravated identity fraud did not constitute "crimes against persons"). We are not aware of any court that has

---

[9] This dichotomy reaches far beyond the immigration context and falls along similar definitions in all areas of law. *Compare United States v. Trejo-Galvan*, 304 F.3d 406, 407 (5th Cir. 2002) ("[A] 'crime against the person' is an offense, that by its nature, involves a substantial risk that the offender will intentionally employ *physical force against another person*." (emphasis added)), *with United States v. Collins*, 854 F.3d 1324, 1331 (11th Cir. 2017) (holding "that various types of fraud, and their attendant false or misleading representations, are offense[s] against property" and noting that crimes against property "include[] offenses in which the defendant intends to damage another's property, . . . situations where the defendant seeks to derive an unlawful benefit from another's property or otherwise deprive a person of his property, therefore acting in opposition to or contrary to the classic property rights of ownership and possession" (internal quotation marks omitted)).

categorized wire fraud or identity theft as a "crime against persons."[10]  In short, there is no indication in the agency's decisions that it intended to adopt this novel and virtually limitless definition of a "crime against persons."  Instead, the decision simply reflects a legal error.

Although the IJ also proceeded to quote from Ojo's indictment, the indictment was not then analyzed under step one; rather, the quote appears to be – along with the reference to the judgment of conviction and restitution order – part of the "totality of the circumstances" analysis at step two.  Even assuming *arguendo* that the quote to the indictment could be construed as an implicit part of the step-one analysis, the erroneous classification of Ojo's crimes as a "crime against persons" still would have infected that analysis because the IJ cited case law from this Court for the proposition that "[c]rimes against persons are more likely to be particularly serious than are crimes against property," Cert. Admin. R.

---

[10] The dissent similarly attempts to explain away the use of "crimes against persons" by suggesting that the IJ may have used the term as a colloquial phrase "to emphasize that Ojo's economic crimes should be taken seriously because those crimes have real victims." *Post* at 22.  That interpretation requires us to presume that the agency was using this legal term of art in some colloquial manner even though the phrase is cited by the IJ and the BIA in this case as part of its statement of law.  We decline to adopt that speculative and implausible reading.  Indeed, the dissent acknowledges that "crimes against persons" is a "term of art" and concedes the possibility that the IJ may have incorrectly used that term.  *Id.* at 23.

at 50 (citation omitted), and thus would have been analyzing and weighing the elements through that flawed lens.

Moreover, this definitional error was not corrected by the BIA. Although it correctly cited the two-part legal framework, the BIA skipped immediately to its explanation for agreeing with the IJ's step-two analysis, without analyzing step one at all.[11] *See* Cert. Admin. R. at 6 ("[T]he Immigration Judge examined the individualized characteristics of the respondent's offenses and determined that – based on the nature of the convictions and the underlying circumstances of the case – [Ojo] had been convicted of a particularly serious crime."). Hence, as a result of its decision to summarily categorize Ojo's offenses as "crimes against persons," contrary to law, the agency failed to adequately explain its rationale for finding, at step one, that Ojo's convictions were potentially in the ambit of particularly serious crimes.

The government's attempts to have the Court overlook this legal error are unpersuasive. First, the government notes that federal courts have routinely

---

[11] We also note that, in articulating the legal standard, the BIA (like the IJ) cited case authority that "[c]rimes against persons are more likely to be categorized as 'particularly serious crimes.'" Cert. Admin. R. at 6 (citation omitted). Therefore, even if the BIA implicitly considered the elements at step one, that citation suggests that the BIA was operating under the same legal error that impacted the IJ – namely, the erroneous view that Ojo's criminal convictions were "crimes against persons."

upheld findings by the agency that a wire fraud offense is a particularly serious offense. Second, the government argues that a categorical approach is not required under the law at the first step of the analysis. Both arguments miss the point.

We recognize that the agency on remand might reasonably consider crimes against property, such as fraud or identity theft, particularly serious. *See, e.g.*, *Arbid v. Holder*, 700 F.3d 379, 382 (9th Cir. 2012) (mail fraud); *Zhong Qin Yang*, 570 F. App'x at 384–85 (device fraud and identity theft); *Valerio-Rameriz v. Sessions*, 882 F.3d 289, 299 (1st Cir. 2018) (identity theft). The issue here, however, is not whether the agency can reach such a conclusion, but rather its failure to follow its own precedent which sets forth the framework under which such a determination should be made. *See Johnson v. Ashcroft*, 378 F.3d 164, 171 (2d Cir. 2004) (The agency "acts arbitrarily and unlawfully when it simply ignores established holdings.").

Additionally, although not requiring a categorical match to any particular statute or to any list of enumerated criteria, the BIA's own precedent requires the first step of the analysis to consist of an elements-only examination of the crime at issue to determine whether such elements "potentially bring the crime into a

31

category of particularly serious crimes." *See In re N-A-M-*, 24 I. & N. Dec. at 342; *see also Luziga v. Att'y Gen.*, 937 F.3d 244, 254 (3d Cir. 2019) (remanding because "rather than considering the elements of conspiracy to commit wire fraud, the BIA described a hybrid of the elements and facts of [petitioner's] conviction" to decide that petitioner's "offense potentially f[e]ll within the ambit of a particularly serious crime").

The dissent asserts that "[t]his two-step procedure is based on the court's own interpretation of *Matter of N-A-M-*," *post* at 17, and that we are failing to defer to the agency's interpretation of its own precedent, *see id.* at 22. However, here, the IJ quoted the applicable language from *In re N-A-M-*, and similarly concluded (contrary to the dissent's alternative interpretation) that it requires a two-step process, with the first step consisting of an elements-only analysis. *See* Cert. Admin. R. at 50 ("The Immigration Judge should first determine whether 'the elements of the offense . . . potentially bring the crime into a category of particularly serious crimes.' If not, 'the individual facts and circumstances of the offense are of no consequence,' and the applicant is not barred from asylum." (quoting *In re N-A-M-*, 24 I. & N. Dec. at 342)). The BIA quoted the standard in similar language. Cert. Admin. R. at 6. However, having articulated the two-step

analysis demanded by the agency's own precedent, the IJ then failed to conduct a step-one analysis. In remanding, we simply are requiring the agency to follow its own interpretation of its precedent, which was clearly set forth in *In re N-A-M-*. *See* 24 I. & N. Dec. at 342.[12]

To the extent the IJ even arguably purported to follow its precedent, the analysis was based on a legally erroneous premise regarding "crimes against persons," and the BIA failed to address this requisite step at all. Despite the government's apparent suggestion that "acknowledg[ing] the steps of *N-A-M-*" suffices, Appellee's Br. at 30, compliance with *In re N-A-M-* required more than mere "acknowledge[ment]"; it required the actual undertaking of the necessary

---

[12] The dissent cites two out-of-circuit decisions, as well as an unpublished decision from this Court, to suggest that our reading of *In re N-A-M-* is unusual. *Post* at 18–20. However, in *Anaya-Ortiz v. Holder*, the petitioner did not challenge the IJ's particularly serious crime determination with respect to the elements of the crime. 594 F.3d 673 (9th Cir. 2010). Whether the agency followed step one of *In re N-A-M-* was not raised, and so the Ninth Circuit did not address the issue. In *Mbendeke v. Garland*, we upheld the agency's application of *In re N-A-M*, because "[t]he IJ's decision stated the threshold question and the elements of the offense of conviction before considering the individual factors" and there was "no indication that the agency misapprehended the offense elements." No. 19-19766, 2021 WL 2026082, at *1 & n.1 (2d Cir. 2021). Here, in contrast to *Mbendeke*, the IJ did not separately state the elements before considering the individual factors. Also, unlike in *Mbendeke*, the IJ misapprehend the elements by classifying the offense as a "crime against persons." Similarly, although the dissent cites *Bare v. Barr*, the Ninth Circuit distinguished *Luziga* on the ground that, unlike here, the record did not suggest that the agency misapprehended the elements in any way. 975 F.3d 952, 963 (9th Cir. 2020).

evaluation devoid of any legal error. *See Luziga*, 937 F.3d at 254 (remanding because, although the BIA "cited *N-A-M-* and even stated that it would consider the 'elements' of [petitioner's] offense," it did not complete the requisite analysis).

Accordingly, the agency's failure to follow its own precedent for determining whether Ojo's conviction involved a "particularly serious crime" requires remand of the application for withholding of removal.

### E.    CAT Protection

To receive protection under the CAT, an applicant must "establish that it is more likely than not that he . . . would be tortured if removed." 8 C.F.R. § 1208.16(c)(2). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 1208.18(a)(1). As relevant here, the IJ denied CAT protection, finding that Ojo "failed to show that he would more likely than not be tortured in Nigeria as a criminal deportee" because it was speculative that he would face persecution by the police. Cert. Admin. R. at 52. In dismissing the appeal, the BIA essentially repeated the IJ's finding that Ojo's assertion was "speculative." Cert. Admin. R. at 7. Ojo argues

34

that the agency erred when it failed to analyze unrebutted evidence, including an expert declaration, that was material to his claim. We agree.

As noted *supra*, to facilitate meaningful judicial review of a decision by the agency, we "require a certain minimum level of analysis from the IJ and BIA opinions." *Poradisova*, 420 F.3d at 77 (collecting cases). We therefore expect "some indication that the IJ considered material evidence supporting a petitioner's claim." *Id.* (citing *Yan Chen v. Gonzales*, 417 F.3d 268 (2d Cir. 2005)); *see also Tanusantoso v. Barr*, 962 F.3d 694, 699 (2d Cir. 2020) (holding that the agency "must address a petitioner's primary evidence, particularly when that evidence is credible and points toward a conclusion contrary to that reached by the [agency]"). "[F]ailure to consider material evidence in the record is ground for remand." *Delgado v. Mukasey*, 508 F.3d 702, 709 (2d Cir. 2007); *see also Scarlett*, 957 F.3d at 329–31 (remanding where the agency did not appear to give reasoned consideration of all relevant evidence); *Yan Chen*, 417 F.3d at 275 (remanding for failure to consider country conditions reports); *Ramsameachire v. Ashcroft*, 357 F.3d 169, 186 (2d Cir. 2004) (remanding "because the INS's regulations require the agency to consider all evidence relevant to the CAT claim").

The IJ concluded that Ojo's claim that he would face torture if returned to Nigeria on account of his status as a criminal deportee was "speculative," Cert. Admin. R. at 52, but, in reaching that decision, the IJ failed to address probative and potentially dispositive evidence supporting Ojo's claim. More specifically, the agency did not address Ojo's other evidence, including an expert declaration from Dr. Ugochukwu, related to his claim that he would face torture as a criminal deportee. Neither the IJ nor the BIA mentioned any evidence beyond Ojo's "credible" testimony, and so it is entirely unclear whether the agency even considered, *inter alia*, the unrebutted Ugochukwu Declaration in denying Ojo's CAT claim. Such evidence, which described the detention of criminal deportees and the squalid conditions and severe abuse faced by the same, may have rendered Ojo's claim non-speculative and supported an agency finding that Ojo was likely to suffer persecution as a result of his status as a criminal deportee.

The government argues that the IJ should be presumed to have considered and reviewed the declaration because, in March 2015, the IJ had "relied on the report as a reason why the case should be adjourned until after Ojo's criminal appeal was resolved." Appellee's Br. at 38. This argument is unpersuasive. First, we note that, by the time Ojo's case was returned to the IJ, over *four years* had

36

passed since the IJ had referenced the report. Thus, we question whether it is reasonable to presume, notwithstanding the complete silence regarding this material evidence in the decision, that the IJ had recalled the declaration from over four years earlier and had tacitly dismissed what he had earlier referred to as "on the papers, [a] good expert opinion," Cert. Admin. R. at 285, for some unarticulated reason. The fact that, as the government and the dissent contend, the written decision contains a generalized statement that the IJ "familiarized himself with the entire record of proceedings," Cert. Admin. R. at 47, provides insufficient support to such an awareness of this particular piece of evidence under these circumstances. *See Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011) ("When nothing in the record or the BIA's decision indicates a failure to consider all the evidence, a general statement that [the agency] considered all of the evidence before [it] may be sufficient. But, where there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence." (alterations in original) (internal quotation marks and citation omitted)).

More importantly, even assuming such awareness and consideration of the expert declaration could be presumed, the agency is not excused from providing its reasoning for rejecting that material evidence. *See Guan Shan Liao v. U.S. Dep't of Just.*, 293 F.3d 61, 68 (2d Cir. 2002) ("When the Board decides a case, as here, using summary language with little explanation for the conclusion reached, intelligible appellate review is made difficult."). The IJ's failure to provide any explanation regarding the expert declaration is even more concerning here because he had previously described it (years earlier) as a "good expert opinion" and also found Ojo's testimony to be credible at the hearing.[13] In such circumstances, we are not permitted to guess at the reasons for rejecting it and then analyze the sufficiency of those possible reasons. A matter as important as whether an individual should remain in the United States because his or her removal would result in torture cannot be left to such speculation and judicial guesswork. *See, e.g.*, *Anderson v. McElroy*, 953 F.2d 803, 806 (2d Cir. 1992) ("When faced with cursory, summary or conclusory statements from the BIA, we cannot presume anything other than such an abuse of discretion, since the BIA's denial of

---

[13] Notwithstanding the IJ's favorable characterization of the expert opinion, the dissent excuses the agency's failure to address it because, in the dissent's *own judgment*, it "added nothing to the arguments the agency already considered and rejected," *post* at 27–28, and was "not probative," *post* at 33 n.24.

relief can be affirmed only on the basis articulated in the decision . . . and we cannot assume that the BIA considered factors that it failed to mention in its decision." (internal quotation marks omitted)); *see also Baharon v. Holder*, 588 F.3d 228, 233 (4th Cir. 2009) ("We are acutely aware that our job as a reviewing court is not to reweigh the evidence before the IJ. It is, however, our responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder. Those who flee persecution and seek refuge under our laws have the right to know that the evidence they present of mistreatment in their home country will be fairly considered and weighed by those who decide their fate." (citations omitted)).

The government relatedly argues that, even if the Ugochukwu Declaration was overlooked, the petition should still be denied because Ojo "does not offer an alternative argument that, all evidence being considered, a reasonable factfinder would be compelled to draw the inferences he advances." Appellee's Br. at 39. The dissent also relies heavily on this argument regarding the applicable standard, and suggests it is "quite something" that we ignore it. *Post* at 28–29 n.21. That standard, however, is inapplicable in this context. If the agency overlooks material evidence supporting a petitioner's claim or fails to provide sufficient reasoning for the reviewing court to understand the basis for rejecting such evidence, a

petitioner is entitled to a remand without showing that such evidence would compel a decision in petitioner's favor. *See Poradisova*, 420 F.3d at 77. In *Manzur v. U.S. Department of Homeland Security*, 494 F.3d 281 (2d Cir. 2007), we explained:

> This Court . . . will not hesitate to vacate and remand where the BIA or IJ analysis is insufficient to determine whether the correct legal standard was applied. Such defects are not excused by the fact that a hypothetical adjudicator, applying the law correctly might also have denied the petition for asylum. This Court will *vacate* BIA conclusions, as to the existence or likelihood of persecution, that a perfectly reasonable fact-finder *could* have settled upon, insofar as the BIA either has not applied the law correctly, or has not supported its findings with record evidence.

*Id*. at 289 (internal quotation marks and citations omitted); *accord Delgado*, 508 F.3d at 709.

To hold otherwise would be to usurp the agency's role, entrusted by Congress, to assess and weigh the evidence and, instead, substitute the court's judgment as to such evidence for that of the agency. *See S.E.C. v. Chenery Corp.*, 318 U.S. 80, 88 (1943) ("For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency."). As the Supreme Court has emphasized in the immigration context:

> A court of appeals is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own

40

conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

*I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (internal quotation marks and citations omitted); *see also Cao He Lin v. U.S. Dep't of Just.*, 428 F.3d 391, 400 (2d Cir. 2005) ("To assume a hypothetical basis for the IJ's determination, even one based in the record, would usurp her role."); *Shi Liang Lin v. U.S. Dep't of Just.*, 416 F.3d 184, 192 (2d Cir. 2005) ("Were courts obliged to create and assess ex-post justifications for inadequately reasoned agency decisions, courts would, in effect, be conscripted into making policy. Such an activity is, for myriad and obvious reasons, more properly the province of other bodies, particularly where, as here, the other body is an agency that can bring to bear particular subject matter expertise. Accordingly, we must reject the government's entreaty to adjudicate by ex-post hypothesis."); *El Moraghy v. Ashcroft*, 331 F.3d 195, 202 (1st Cir. 2003) (explaining that a court "'should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence'" (quoting *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992))).

To be sure, as the government and the dissent both note, we have made clear that the agency is not required to "expressly parse or refute on the record each

individual argument or piece of evidence." *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 169 (2d Cir. 2008) (internal quotation marks omitted). However, we have generally made that observation in situations involving a failure to refute every argument or piece of evidence relating to a petitioner's credibility assessment, as demonstrated by the two cases cited by the government. *See, e.g.*, *Xiao Ji Chen*, 471 F.3d at 336 n.17; *Zaman v. Mukasey*, 514 F.3d 233, 239 (2d Cir. 2008). For example, in *Xiao Ji Chen*, the petitioner made statements in her testimony inconsistent with her medical records, written asylum application, other documents submitted, and the State Department profile for her country. *Id.* at 336–37. The IJ determined her testimony was not credible and denied her application. *Id.* at 338. We rejected petitioner's claim that the IJ erred in failing to expressly reject her testimony as inconsistent. *Id.* at 336 n.17 (observing that while an IJ must "take . . . into account . . . *significant* factual assertions offered by a petitioner," "the IJ need not engage in robotic incantations to make clear that he has considered and rejected a petitioner's proffered explanation" (internal quotation marks and citations omitted)). Likewise, *Zaman* concerned an adverse credibility determination. *Zaman*, 514 F.3d

at 239. Saliently, we observed that "there was no testimony or evidence that was 'independently corroborated' and that the IJ failed to assess." *Id.*[14]

No case cited by the government involved the failure to address an expert declaration or expert testimony supporting a petitioner's position. As to material evidence of that nature, the agency is required to acknowledge the evidence and

_____

[14] The dissent cites unpublished summary orders that also have not required the agency to parse through, or refute, every piece of evidence in addressing a variety of different immigration claims. *Post* at 32–33 n.23. We recognize that this sensible rule can be (and is) applied to various BIA decisions under certain factual circumstances, but none of the cited summary orders are apposite to the situation here. For example, in *Cruz v. Wilkinson*, we observed that, although a medical report was not explicitly referenced, the BIA acknowledged the contents in other ways, including by "referenc[ing] the page of the IJ's decision discussing the report." 848 F. App'x 14, 16 (2d Cir. 2021). In *Yi Lun Wang v. Garland*, we did not require the agency to address a report submitted on appeal because petitioner's evidence did not demonstrate any increased persecution. 857 F. App'x 679, 682 (2d Cir. 2021). In *Medrano Medrano v. Garland*, the evidence at issue was evidence of petitioner's criminal history, which we found the BIA did not mischaracterize, let alone ignore. 852 F. App'x 586, 587–88 (2d Cir. 2021). In *Coreas-Alvarado v. Barr*, the IJ acknowledged the conclusions in an expert affidavit, even though it did not expressly acknowledge the affidavit itself. 838 F. App'x 594, 598 (2d Cir. 2020). In *Amarasinghe v. Barr*, where the agency assumed the validity of certain medical evidence, we determined that it "was not required to explicitly consider [other medical] evidence" because "that evidence was of limited relevance without comparative evidence" of medical treatment disparities between Sri Lanka and the United States. 831 F. App'x 14, 15 (2d Cir. 2020). In *Balasegarathum v. Barr*, we concluded that the agency did not need to explicitly consider a medical report or country conditions evidence where the medical report did not address the grounds for the adverse credibility determination as to the applicant's claim of torture, and the country conditions evidence "did not corroborate the particular past abuses that [petitioner] claimed to have suffered." 827 F. App'x 90, 93 (2d Cir. 2020). Every other summary order cited by the dissent is likewise not comparable to the factual situation here, involving a complete failure to address material evidence which we have held in numerous *precedential* opinions – including *Poradisova*, *Tanusantoso*, *Delgado*, *Ramsameachire*, and *Yan Chen* – requires remand.

describe "why its view . . . departed from that the of the expert[]."[15] *Tanusantoso*,

962 F.3d at 699. For example, in *Manning*, the IJ found that the petitioner's credible

testimony about his fear concerning future torture was "simply too speculative."

954 F.3d at 486 (quoting the record). Although noting that every piece of evidence

need not be parsed or refuted by the IJ, we remanded because we found "error in

the IJ's and BIA's failure to consider the unrebutted expert affidavit . . . which we

assume to be credible" and "'it is not sufficient simply to ignore' [the expert's]

affidavit 'when announcing a conclusion' regarding likelihood of torture." *Id.*

(quoting *Yan Chen*, 417 F.3d at 272); *see also Ramsundar v. Barr*, 830 F. App'x 33, 35

(2d Cir. 2020) ("[A]lthough there may be grounds for the BIA to give diminished

---

[15] We are aware of this Court's decision in *Wei Guang Wang v. Board of Immigration Appeals*, 437 F.3d 270, 275–76 (2d Cir. 2006), in which we held that no remand was required even though the agency did not address two affidavits regarding changes in country conditions. That case is factually distinguishable. More specifically, one affidavit was of "limited relevance" because it was not related to petitioner's circumstances, and was one that the "BIA [was] asked to consider time and again" in more than 200 asylum cases. *Id.* at 275. The other affidavit was immaterial to changed conditions because the anecdotal evidence in the affidavit took place before the BIA denied the petitioner's application for asylum. Here, in contrast, the declaration was particular to Ojo's circumstances and, if credited, supported his claim (and his testimony, which the IJ credited). Moreover, as noted above, the declaration had previously been referred to, in the record, as a "good expert opinion." Thus, this is not the extremely rare case, such as *Wei Guang Wang*, where the expert's declaration was "too insignificant to merit discussion." *Douglas v. I.N.S.*, 28 F.3d 241, 244 (2d Cir. 1994). In fact, even in *Wei Guang Wang*, we noted that "[t]he BIA should demonstrate that it has considered [country conditions] evidence, even if only to dismiss it." 437 F.3d at 275.

44

weight to [the expert's] declaration, we are limited to the reasons given by the BIA, and the BIA did not explain why it did not find [the expert's] conclusions persuasive.").

In fact, the agency's own precedent also reflects this requirement as it relates to expert reports or testimony. *See In re M-A-M-Z-*, 28 I. & N. Dec. 173, 177–78 (B.I.A. 2020) ("[W]hen the Immigration Judge makes a factual finding that is not consistent with an expert's opinion, it is important . . . to explain the reasons behind the factual findings."); *see also In re J-G-T-*, 28 I. & N. Dec. 97, 104 (B.I.A. 2020) ("There is no indication that the Immigration Judge reasonably considered whether the witness's opinion had a sufficient factual basis to essentially establish the respondent's claim.").

Other circuit courts have reached the same conclusion under analogous circumstances. *See, e.g.*, *Alvarez Lagos v. Barr*, 927 F.3d 236, 256 (4th Cir. 2019) (remanding where the IJ, "without discussing any of the evidence in the record [including expert declarations] – summarily concluded" that the applicant's assertion that she would be tortured if returned to her home country was "speculation rather than evidence" (internal quotation marks omitted)); *Castillo v. Barr*, 980 F.3d 1278, 1283 (9th Cir. 2020) ("If the Board rejects expert testimony, it

must state in the record why the testimony was insufficient to establish the probability of torture." (internal quotation marks omitted)); *see generally Abdel-Masieh v. U.S. I.N.S.*, 73 F.3d 579, 585 (5th Cir. 1996) ("While we do not require that the BIA address evidentiary minutiae or write any lengthy exegesis, its decision must reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims." (citation omitted)).[16]

We thus find error in the agency's determination that Ojo was not more likely than not to suffer torture without any apparent consideration of material evidence or, at a minimum, by failing to provide reasoning as to why such

---

[16] The dissent cites to sister circuit court decisions that have articulated the same type of "no need to parse every piece of evidence" rule that exists in our Circuit. *Post* at 26–27 n.19. These courts, however, similarly remanded where there is insufficient reasoning or a failure to consider a key piece of evidence, as is the case here. Indeed, some of the very cases cited by the dissent did exactly that, and thus support our position. For example, in *Tan v. United States Attorney General*, the Eleventh Circuit vacated the agency's decision and remanded, holding that the agency failed to give "reasoned consideration" to the petition because, among other reasons, the IJ "misstated the contents of the record" and, although the IJ found petitioner's testimony credible, he failed to make adequate findings to support his decision to deny petitioner's application for withholding of removal. 446 F.3d 1369, 1376–77 (11th Cir. 2006). Moreover, in *Yan Lan Wu v. Ashcroft*, the Third Circuit remanded because the IJ found the applicant credible, but then did not explain why she rendered a decision on the applicant's asylum claim contrary to that decision. 393 F.3d 418, 425 (3d Cir. 2005). Also, in *Abdel-Masieh v. United States Immigration and Naturalization Service*, the Fifth Circuit remanded because, among other reasons, the BIA failed to address much of petitioner's key evidence concerning his likelihood of persecution. 73 F.3d 579, 586–87 (5th Cir. 1996). The remainder of the out-of-circuit cases can be distinguished in that, among other things, they did not involve a failure to consider an expert declaration or opinion.

evidence was rejected if it was considered. Accordingly, we remand his CAT claim as it pertains to threatened torture as a criminal deportee so that the agency may give full consideration to Ojo's evidence and explain the reasoning for its decision.

\*　　　　　　　\*　　　　　　　\*

As to our decision overall, the dissent asserts that we incorrectly depart from legal standards that apply to immigration cases, *post* at 2–4, and require the agency to "follow a particular formula or incant . . . magic words and phrases," *id*. at 3–4. Neither of those assertions is accurate. Instead, consistent with longstanding principles of law, we hold that a case must be remanded where the agency: (1) applied the wrong legal standard for changed circumstances – namely, by requiring the applicant (contrary to the plain text of the regulation) to demonstrate that the changed circumstances were not caused by his own conduct; (2) failed to conduct the totality of the circumstances analysis as is required under the law; (3) erroneously referred to wire fraud as a "crime against persons" and failed to follow its own precedent as it relates to the procedure for determining whether a crime constitutes a "particularly serious crime"; and (4) failed to address an unrebutted expert declaration that corroborated the applicant's claim of torture.

47

The dissent describes these holdings in various ways – including as "second-guessing," requiring "magic words and phrases," "nitpicks," "quibbling micromanagement of the agency's adjudicatory procedure," and "object[ions] to a single jot or tittle in the agency's opinions." *Post* at 1, 2, 4, 16, 34. We respectfully reject these characterizations. Insisting that an agency apply the correct legal standards, follow its own precedent, and provide at least some reasoning to denote and explain its consideration of an unrebutted expert declaration are not, in our view, "nitpicks," or anything of the sort. These basic and well-settled legal requirements ensure fairness and adherence to the law in agency proceedings, as well as facilitate public confidence in the outcome of such proceedings. We recently noted, in the context of remanding a sentencing, how important it is for this Court to have sufficient reasoning in the record to conduct meaningful appellate review, *see United States v. Young*, 998 F.3d 43, 56 (2d Cir. 2021), and we demand no less in reviewing immigration decisions where an individual's ability to legally remain in the United States hangs in the balance.

The only seemingly "magic phrase" that permeates today's opinions in this case is the dissent's use on at least four occasions of portions of a sentence from the Supreme Court's recent decision in *Garland v. Ming Dai*, which stated that "a

48

reviewing court must uphold even a decision of less than ideal clarity if the agency's path may be reasonably discerned." 141 S. Ct. at 1679 (internal quotation marks omitted). The circumstances in *Ming Dai*, and the corresponding application of that legal principle, however, were qualitatively different from those present here. More specifically, in *Ming Dai*, the Supreme Court rejected the rule adopted by the Ninth Circuit, which provided that, in the absence of an explicit adverse credibility determination by the IJ or BIA, the reviewing court must treat the non-citizen's testimony as credible and true. *Id*. at 1676–77. Moreover, the Supreme Court stated that "the [Ninth Circuit] ignored whether the agency's statements could be fairly understood as rejecting his credibility," including the fact that the IJ's decision "noted [the applicant's] story changed from the time of the probation report to the time of the hearing," and "further concluded that [the applicant's] testimony sought to minimize his actions and condone violence against his girlfriend." *Id*. at 1679–80. Thus, *Ming Dai* did not involve an agency applying an incorrect legal standard or failing to provide any explanation as to its reason for rejecting a material piece of evidence.

Neither the government nor the dissent cites to any case where the Supreme Court or this Court (or any other appellate court) has ever upheld a BIA decision

to reject a claim for relief where the applicant's testimony was found to be credible and the applicant was denied such relief for lack of corroboration, but neither the IJ nor the BIA addressed an unrebutted expert declaration that corroborated the applicant's claim.[17]  We disagree with the dissent's contention that, in such circumstances as here, the agency's reasoning "may reasonably be discerned." *Ming Dai*, 141 S. Ct. at 1679; *see also Zamorano v. Garland*, 2 F.4th 1213, 1222 (9th Cir. 2021) (distinguishing *Ming Dai* and concluding that the agency's decision could not be reasonably discerned because "there was no indication that the IJ implicitly considered any favorable factors in making its voluntary departure determination").  In *Ming Dai*, the Supreme Court cautioned that "[o]f course, reviewing courts remain bound by traditional administrative law principles, including the rule that judges generally must assess the lawfulness of an agency's

---

[17] The dissent asserts that "there are several such cases," *post* at 31, and then cites only to two unpublished decisions by this Court, which are distinguishable, *see id.* at 31 n. 22.  In *Xiu Yun Zheng v. Board of Immigration Appeals*, we determined that, where the agency found that the petitioner lacked credibility (and that credibility finding was unchallenged), it was not error for the agency to fail to explicitly reject an "oft-cited" expert report, "which the BIA [was] asked to consider time and again."  191 F. App'x 42, 44–45 (2d Cir. 2006).  In *Hernandez v. Lynch*, we likewise concluded that, where petitioner "failed to provide any credible basis to conclude that his father was murdered or that he ha[d] been threatened on account of his family ties," the agency did not err by not also discussing an expert report that assumed such a connection solely "based on [petitioner's] statements to the expert and not on firsthand knowledge."  644 F. App'x 61, 63–64 (2d Cir. 2016).

action in light of the explanations the agency offered for it rather than any *ex post* rationales a court can devise." *Ming Dai*, 141 S. Ct. at 1679 (citing *Chenery Corp.*, 318 U.S. 80).

The dissent supplies that exact type of *ex post* rationalization here. For example, the dissent boldly characterizes the expert declaration as "not probative" and as "add[ing] nothing to the arguments the agency already considered and rejected," *post* at 27–28, 33 n.24, even though the IJ had four years earlier referred to it as "on the papers, [a] good expert opinion," Cert. Admin. R. at 285, and never classified it as immaterial or gave any reason for rejecting it (or even mentioned it again). We decline to encroach on the agency's important role in this manner. Instead, we instruct the agency to exercise its own discretion under the proper legal standards that we have outlined and to provide sufficient reasoning for this Court to conduct meaningful review of its decisions.

## III.   CONCLUSION

For the foregoing reasons, the petition for review is **GRANTED**, the BIA's decision is **VACATED**, and the case is **REMANDED** to the BIA for further proceedings consistent with this opinion.

MENASHI, *Circuit Judge*, dissenting:

This is a straightforward case. Olukayode David Ojo, a Nigerian citizen illegally present in the United States, scammed unsuspecting Americans by selling non-existent vehicles on the internet and then using false identity documents to collect payments wired to Western Union. For doing so, Ojo was convicted of conspiracy to commit wire fraud and conspiracy to possess with intent to use false identification documents unlawfully. In Ojo's removal proceedings, the agency held that Ojo's asylum application—filed three years too late—was untimely and that he did not qualify for an exception based on changed circumstances; that, alternatively, Ojo did not merit asylum in the exercise of the agency's discretion because of his criminal conviction; that Ojo was barred from withholding of removal because his conviction was for a particularly serious crime; and that Ojo did not meet his burden under the Convention Against Torture to show that he would more likely than not be tortured in Nigeria.

Each of the agency's decisions was entirely reasonable. Indeed, the court's opinion today does not even question the agency's reasoning on the merits. *See ante* at 5 ("[W]e express no view as to how the agency should resolve these issues on the merits as they relate to Ojo's claims."). Our review of the agency's determinations is deferential. Here, for example, its "discretionary judgment whether to grant relief" under the asylum statute is "conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). There is no justification for second-guessing its judgment in this case.

Yet the court nitpicks its way to vacating every aspect of the agency's decision. Though it does not disagree with the agency's substantive judgment, the court decides the agency's opinion could have been written more clearly—and it remands for the agency to revise it.

The court's minor quibbles do not justify vacatur. First, it is well-established that criminal activity is not a basis for granting asylum, and therefore an alien who commits crimes in the United States cannot claim that those crimes constitute "changed circumstances" that would justify an untimely filing of an asylum application under 8 U.S.C. § 1158(a)(2)(D). Accordingly, the agency explained that it rejected Ojo's claim because his criminal convictions "were caused by his own criminal conduct." Cert. Admin. R. at 5. Nevertheless, the court vacates the agency's decision because its reasoning was not "clear enough." *Ante* at 19 (quoting Appellee's Br. 24).

Second, we must treat a discretionary denial of asylum as "conclusive" unless it is "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). It is clear that the agency's decision was neither manifestly contrary to the law nor an abuse of discretion. Nevertheless, the court vacates the agency's decision because it did not "reference the legal standard requiring consideration of mitigating factors" or incant the phrases "totality of the circumstances" and "favorable and adverse factors" in the course of making its decision. *Ante* at 22-23.

Third, the agency receives deference on how to interpret its own regulations and precedents. *Li Yong Zheng v. DOJ*, 416 F.3d 129, 131 (2d Cir. 2005). Nevertheless, the court vacates the agency's

2

decision for failing to "follow its own precedent" because the agency applied its precedent differently than today's panel would apply it. *Ante* at 34.

Fourth, the agency "need not discuss each and every piece of evidence presented by an asylum applicant when rendering a decision," *Xiao Ji Chen v. DOJ*, 471 F.3d 315, 341 (2d Cir. 2006), and a court may not reverse the agency's finding that an applicant is unlikely to be tortured "unless any reasonable adjudicator would be compelled to conclude to the contrary," *Gallina v. Wilkinson*, 988 F.3d 137, 142 (2d Cir. 2021) (quoting 8 U.S.C. § 1252(b)(4)(B)). Nevertheless, the court vacates the agency's decision because it did not specifically discuss "an expert declaration" in the record, even though the declaration made no difference to the outcome of the case. *Ante* at 35.

None of the court's objections has any basis in the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, which the court purports to apply. "Nothing in the INA contemplates anything like the embellishment" the court adopts in today's opinion, and "it is long since settled that a reviewing court is 'generally not free to impose' additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1677 (2021) (quoting *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 524 (1978)). Rather, as the Supreme Court has unanimously and clearly stated, "a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id.* at 1679 (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). A reviewing court errs—as the court does today—by requiring the agency to "follow a particular formula or incant 'magic

3

words'" in its decisions. *Id.* The agency "need not use any particular words" to reach its decision. *Id.*

In this case, the path by which the agency reached its conclusions may reasonably be discerned, and those conclusions were properly supported and consistent with law. Yet the court vacates the agency's decision because the agency did not follow a particular formula or incant the magic words and phrases that the court would have preferred. The court errs in doing so. I therefore dissent.

## I

The agency correctly concluded that when an alien commits crimes in the United States, those crimes do not amount to "changed circumstances which materially affect the applicant's eligibility for asylum" that would qualify the alien for an exception to the one-year filing deadline for asylum applications. 8 U.S.C. § 1158(a)(2)(D). Ojo argued that because he is now a felon, he should be excused from the statutory deadline. The agency rejected this argument because the purported "changed circumstances" were Ojo's own "criminal conduct." Cert. Admin. R. at 5 ("[H]is arrest and subsequent detention do not constitute changed or extraordinary circumstances because these events were caused by his own criminal conduct.").

That decision was correct. Ojo's criminal activity does not qualify him for the "changed circumstances" exception. To count as "changed circumstances," the factual development must "materially affect the applicant's *eligibility for asylum*." 8 U.S.C. § 1158(a)(2)(D) (emphasis added). Ojo himself acknowledges that "changed circumstances" must relate to the merits of an asylum claim: he notes that such circumstances must include "reasons why [the alien] might have accrued a meritorious asylum claim, due to changed

4

circumstances, only after having already been in the United States for one year or more." Petitioner's Br. 16.

Criminal activity in the United States is not a valid basis for an asylum claim. To establish eligibility for asylum, an applicant must show that he meets the statutory definition of a "refugee." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is someone who cannot return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42). Ojo's new status as a convicted felon does not make him a refugee entitled to asylum in the United States—as we and other courts have recognized.[1] We have also repeatedly said that prosecution based on

---

[1] *See, e.g., Yokoyama v. Holder*, 571 F. App'x 12, 14 (2d Cir. 2014) (holding that "the IJ reasonably found that [the petitioner] cannot establish a particular social group based on her suspected criminal activity" because "'[t]reating affiliation with a criminal organization as being protected membership in a social group is inconsistent with the principles underlying the bars to asylum and withholding of removal based on criminal behavior'") (quoting *Matter of E-A-G-*, 24 I. & N. Dec. 591, 596 (BIA 2008)); *Yue Hae Zhong v. Holder*, 346 F. App'x 30, 35 (6th Cir. 2009) ("For the same reasons that drug traffickers do not constitute a 'particular social group,' neither do perjurers."); *Arteaga v. Mukasey*, 511 F.3d 940, 945-46 (9th Cir. 2007) ("We cannot conclude that Congress, in offering refugee protection for individuals facing potential persecution through social group status, intended to include violent street gangs who assault people and who traffic in drugs and commit theft."); *Toussaint v. Attorney General*, 455 F.3d 409, 418 (3d Cir. 2006) ("[W]e are impressed with the precedents of other courts of appeals establishing that, for purposes of the INA, criminal deportees are not recognized as a social group. … [W]e point out that Congress sometimes selects criminals for negative treatment under the INA on account of their records. We reject the notion that Congress would take the opposite approach in this context.") (internal citation omitted); *Elien v.*

5

the consequences of criminal conduct does not amount to persecution.[2] Ojo makes no argument that the purported negative treatment resulting from his criminal convictions would be a "pretext

*Ashcroft*, 364 F.3d 392, 397 (1st Cir. 2004) ("The BIA determined that, whether or not Haitians who commit crimes in the United States are subjected to 'persecution' upon repatriation, it would be unsound policy to recognize them as a 'social group' safeguarded by the asylum statute. … [T]he BIA has never extended the term 'social group' to encompass persons who voluntarily engaged in illicit activities."); *United States v. Aranda-Hernandez*, 95 F.3d 977, 980-81 (10th Cir. 1996) (rejecting the applicant's theory "that he should be afforded protection as a member of a particular social group" consisting of those persons who have worked as informants for drug enforcement agencies of the United States because it "is not supported by case law; nor is it supported by the principles underlying the [Immigration and Nationality] Act"); *Bastanipour v. INS*, 980 F.2d 1129, 1132 (7th Cir. 1992) ("Whatever its precise scope, the term 'particular social groups' surely was not intended for the protection of members of the criminal class in this country, merely upon a showing that a foreign country deals with them even more harshly than we do. A contrary conclusion would collapse the fundamental distinction between persecution on the one hand and the prosecution of nonpolitical crimes on the other.").

[2] *See Gorelik v. Holder*, 339 F. App'x 70, 72 (2d Cir. 2009) ("For purposes of asylum eligibility, prosecution for a crime is not persecution on account of a protected ground."); *Saleh v. DOJ*, 962 F.2d 234, 239 (2d Cir. 1992) ("Punishment for violation of a generally applicable criminal law is not persecution."); *Sovich v. Esperdy*, 319 F.2d 21, 28 (2d Cir. 1963) ("It was not the intent of Congress to make the United States a refuge for common criminals by operation of this humanitarian statute."); *see also Jin Jin Long v. Holder*, 620 F.3d 162, 166 (2d Cir. 2010) ("As a rule, the enforcement of generally applicable law cannot be said to be on account of the offender's political opinion, even if the offender objects to the law."); *Zhang v. Slattery*, 55 F.3d 732, 751 (2d Cir. 1995) ("[A]n applicant for refugee status must establish a fear of reprisal that is different in kind from a desire to avoid the exactions (however harsh) that a foreign government may place upon its citizens.").

for political persecution." *Jin Jin Long*, 620 F.3d at 166. His argument is that his criminal activity *itself* is the changed circumstance that materially affects his eligibility for asylum. *See ante* at 17-18 ("Ojo had independently asserted, apart from any explanation for the delay in filing, that 'changed circumstances' existed based upon his new status as a criminal deportee."). The agency reasonably and correctly rejected that argument, and its "path may reasonably be discerned." *Ming Dai*, 141 S. Ct. at 1679; *see* Cert. Admin. R. at 5 ("[W]e agree with the Immigration Judge's determination that [Ojo's] arrest and subsequent detention do not constitute changed or extraordinary circumstances because these events were caused by his own criminal conduct."). We accordingly "must uphold" the agency's decision. *Ming Dai*, 141 S. Ct. at 1679.

Yet the court vacates the agency's decision because it thinks the immigration judge ("IJ") was insufficiently clear when he considered whether Ojo had demonstrated "the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application" under 8 U.S.C. § 1158(a)(2)(D). The IJ cited 8 C.F.R. § 1208.4(a)(5) for the proposition that the applicant "must establish … that the circumstances were not intentionally created by him through his own action or inaction." Cert. Admin. R. at 49. The court acknowledges that this is a correct statement of Ojo's burden with respect to "extraordinary circumstances" and therefore relevant to the IJ's analysis. *Ante* at 18. But the court says that the IJ should have separately cited 8 C.F.R. § 1208.4(a)(4) as supplying the relevant standard for "changed circumstances," and his failure to do so warrants vacatur. *Id*. Even though the BIA cited *both* § 1208.4(a)(5) *and* § 1208.4(a)(4) in affirming the IJ's decision, the court nevertheless

7

asserts that the BIA also erred because "that the applicant caused his changed circumstances … does not preclude consideration of such circumstances." *Ante* at 19-20.

But the fact that the purportedly changed circumstances "were caused by his own *criminal* conduct," as the BIA observed, Cert. Admin. R. at 5 (emphasis added), *does* preclude consideration of those circumstances because Ojo's criminal conduct does not "materially affect" his "eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D). An applicant's criminal conduct is not a circumstance that makes the applicant eligible for asylum. *See, e.g., Yokoyama*, 571 F. App'x at 14; *Yue Hae Zhong*, 346 F. App'x at 35; *Arteaga*, 511 F.3d at 945-46; *Toussaint*, 455 F.3d at 418; *Elien*, 364 F.3d at 397; *Aranda-Hernandez*, 95 F.3d at 980-81; *Bastanipour*, 980 F.2d at 1132; *Gorelik*, 339 F. App'x at 72; *Saleh*, 962 F.2d at 239; *Sovich*, 319 F.2d at 28; *Jin Jin Long*, 620 F.3d at 166; *Zhang*, 55 F.3d at 751.

The court does not disagree with that proposition. *See ante* at 20 n.5. Yet the court would have preferred that the agency had written that "Ojo's arrest and subsequent detention do not constitute changed circumstances because these events were caused by his own criminal conduct *and criminal activity is not a valid basis for an asylum claim*." This extra phrase is not necessary because this point is already reasonably discernable from the agency's opinions, but the court still vacates the agency's decision for failure to include this extra phrase. That the extra words are easy to produce from the existing record demonstrates how seriously the court departs from the mandate to uphold agency decisions in which the reasoning is apparent. *See Ming Dai*, 141 S. Ct. at 1679 ("[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (internal quotation marks omitted).

8

Remands for extra verbiage are doubly improper because we do not remand, even when we conclude the agency erred, "if the remand would be pointless because it is clear that the agency would adhere to its prior decision in the absence of error." *Xiao Ji Chen v. DOJ*, 434 F.3d 144, 161 (2d Cir. 2006); *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (explaining that "*Chenery* does not require that we convert judicial review of agency action into a ping-pong game" and that remand is not required when it "would be an idle and useless formality"); *NLRB v. Am. Geri-Care, Inc.*, 697 F.2d 56, 64 (2d Cir. 1982) ("[R]eversal and remand are [not] required each and every time an administrative agency assigns a wrong reason for its action; rather, [remand is required] *only* where there is a significant chance that but for the error, the agency might have reached a different result.").

Here, even if the agency somehow erred in evaluating Ojo's claim of changed circumstances, remand would be futile because Ojo's two reasons for qualifying for "changed circumstances" fail. Ojo claimed that "'changed circumstances' existed based upon his new status as a criminal deportee and Boko Haram's increased violence against Christians like himself." *Ante* at 17-18. First, as the court acknowledges, criminal deportees are not a social group entitled to asylum. *Id.* at 20 n.5. Ojo's claim that his criminal conduct qualifies as "changed circumstances" therefore cannot possibly prevail. Second, "Ojo's fear of Boko Haram did not increase as a result of Boko Haram's designation as a terrorist organization." *Id*. at 8. Because, by definition, a fear that is *constant* cannot qualify as a *changed* circumstance, the IJ concluded that Ojo "could not show changed circumstances as to his religious persecution claim." *Id*. We must uphold this finding of fact because the finding that Ojo's fear of Boko Haram remained constant is "supported by reasonable, substantial

9

and probative evidence in the record." *Id.* at 12 (internal quotation marks omitted) (quoting *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009)).[3] In this case, "the substance of the Board's command is not seriously contestable" and "[t]here is not the slightest uncertainty as to the outcome of a proceeding before the Board." *Wyman-Gordon Co.*, 394 U.S. at 766 n.6. It is "useless" and "meaningless" to remand. *Id.*[4]

---

[3] The court writes that it declines to accept this finding of fact because "the BIA … failed to address the IJ's ruling … related to Boko Haram." *Ante* at 21. But, as the court notes earlier, we review the agency's ruling as a whole. "Where, as here, the BIA adopts and affirms the IJ's decision, we review the two decisions in tandem," *id*. at 11 (internal quotation marks and alterations omitted), and therefore we consider the IJ's findings even if the findings were not reiterated by the BIA. In rejecting the agency's finding of fact, the court writes that it "must review the findings the IJ actually made and not seek out bases for denying review on which the IJ did not rely." *Id.* at 22 (quoting *Karaj v. Gonzales*, 462 F.3d 113, 119 (2d Cir. 2006)). Yet, as the court itself notes, the IJ *made* these findings. *See id.* at 8 ("The IJ also concluded that Ojo's fear of Boko Haram did not increase as a result of Boko Haram's designation as a terrorist organization, and thus he could not show changed circumstances as to his religious persecution claim."). So it turns out the court is not willing to accept "the findings the IJ actually made" either. *Id.* at 22.

[4] The court writes that "Ojo has a right to know why his claim was barred by the agency as untimely, as opposed to this Court substituting its own alternative ground." *Ante* at 21. The agency has already explained itself adequately, as I have noted. But, even so, this "right to know" is a doctrine of the court's own invention. *Chenery* does not rely on a notion of due process such as a "right to know"; it is rooted in the separation of powers. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943). We are not allowed "to impose additional judge-made procedural requirements," such as a right-to-know doctrine, "that Congress has not prescribed and the Constitution does not compel." *Ming Dai*, 141 S. Ct. at 1677 (internal quotation marks omitted).

## II

As an entirely independent and alternative ground for denying Ojo's application for asylum, the agency said it would deny the application as a matter of discretion. "Even were the Respondent statutorily eligible for asylum," the IJ wrote, "the Court would deny his application in the exercise of discretion ... [i]n light of the serious fraud that [Ojo] inflicted against this country and its citizens." Cert. Admin. R. at 49-50. The BIA affirmed. *Id.* at 5.

The agency's discretionary decision was reasonable. The agency may deny asylum as a matter of discretion. *See Delgado v. Mukasey*, 508 F.3d 702, 705 (2d Cir. 2007) ("Once an applicant has established eligibility … it remains within the Attorney General's discretion to deny asylum."). Criminal convictions are an adverse factor that the agency may consider, *see Wu Zheng Huang v. INS*, 436 F.3d 89, 100 n.12 (2d Cir. 2006), and Ojo was convicted of crimes involving moral turpitude, *see Jordan v. De George*, 341 U.S. 223, 228 (1951) ("[C]rimes involving fraud have universally been held to involve moral turpitude."); Cert. Admin. R. at 656-58 (order of the IJ explaining that each count of Ojo's convictions was for a crime involving moral turpitude). A criminal alien must overcome an extraordinarily deferential standard of review to overturn the agency's exercise of its discretion to deny an application for asylum because "the Attorney General's discretionary judgment whether to grant relief under [the asylum statute] shall be conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). Those are two separate requirements that must be met for the court to be able to vacate the denial of asylum: the agency's

11

decision must be "manifestly contrary to the law *and* an abuse of discretion." *Id.* (emphasis added).[5]

It was neither. The record does not reveal any significant mitigating factors that would indicate abuse of discretion.[6] Nor did the agency's decision contravene any law. When we have invoked the need to examine "the totality of the circumstances" and to balance "favorable and adverse factors," *ante* at 22 (quoting *Wu Zheng Huang*, 436 F.3d at 98), we have not done so to impose an independent, judge-made procedural requirement.[7] Rather, we have said that this

---

[5] The court does not dispute that these are independent requirements, but it claims that "the failure to provide sufficient reasoning" qualifies as both "an abuse of discretion" and "manifestly contrary to the law" in one fell swoop. *Ante* at 24. The court's analysis eviscerates § 1252(b)(4)(D). When Congress said the agency's decision must be both "*manifestly* contrary to the law *and* an abuse of discretion," 8 U.S.C. § 1252(b)(4)(D) (emphasis added), it was erecting a very high bar for a court to vacate the Attorney General's discretionary judgment. The court effectively ignores that standard by saying all it requires is for a reviewing court to prefer more explanation. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 26, at 174 (2012) ("[No word or provision] should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."). In fact, the agency did not fail to provide sufficient reasoning. But the amount of reasoning it provided certainly did not render its decision "contrary to the law," much less "manifestly" so. 8 U.S.C. § 1252(b)(4)(D).

[6] The court mentions that Ojo "raised a series of mitigating factors to support the granting of asylum in the exercise of discretion," including that Ojo "came to the United States to visit his sisters." *Ante* at 24 n.7 (alteration omitted). The court does not claim that the agency's dismissal of these factors is an abuse of discretion, and it contravenes the INA for the court to reverse in the absence of such an abuse. *See* 8 U.S.C. § 1252(b)(4)(D).

[7] We cannot impose such requirements. *Ming Dai*, 141 S. Ct. at 1677; *Vt. Yankee*, 435 U.S. at 524.

framework evaluates "the substantive bases of the IJ's decision, rather than its procedural aspects." *Wu Zheng Huang*, 436 F.3d at 98. In this case, the court identifies no substantive defects in the agency's decision or mitigating factors of consequence that the agency failed to consider. The court remands not for the agency to engage in any actual balancing of mitigating factors but to revise its opinion to "reference the legal standard requiring consideration of mitigating factors." *Ante* at 23.

The two reasons the court offers for vacating the agency's discretionary denial of asylum are unrelated to the applicable legal standard and otherwise unconvincing. First, the court claims that "the analysis regarding Ojo's conviction constituting a 'particularly serious crime'"—discussed in the next section—"could, depending upon how that issue is resolved on remand, impact the discretionary analysis regarding the 'changed circumstances' on the asylum claim." *Id.* at 24-25. The idea seems to be that once the BIA realizes that the IJ did not observe the technicalities of *Matter of N-A-M-*, 24 I. & N. Dec. 336 (BIA 2007)—at least as the court interprets that decision today— it might decide to reevaluate Ojo's criminal record and perhaps conclude that despite his crimes Ojo merits a discretionary grant of asylum after all. This speculation strains credulity. The agency's discretionary denial was based on Ojo's actual criminal record, which the agency fully considered. *See* Cert. Admin. R. at 49-50. That record is not going to change, and there is no reason to think that the agency will retract its determination that someone with that record does not merit a discretionary grant of asylum.

Second, the court vacates because the IJ did not "reference the legal standard requiring consideration of mitigating factors" or "mention any factor other than the criminal conviction." *Ante* at 23.

13

Notably, the court vacates not because the agency *in fact* ignored serious mitigating factors but because the agency failed to *state* that it "examined 'the totality of the circumstances' or balanced 'favorable and adverse factors.'" *Id.* at 22 (quoting *Wu Zheng Huang*, 436 F.3d at 98). The court thereby insists that the agency must "incant magic words" to survive our review. *Ming Dai*, 141 S. Ct. at 1679 (internal quotation marks omitted). This approach has no basis in the INA, and we are not allowed "to impose additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel." *Id.* at 1677 (internal quotation marks omitted); *Vt. Yankee*, 435 U.S. at 524.

Remanding in these circumstances amounts to what the Supreme Court has called an "idle and useless formality." *Wyman-Gordon Co.*, 394 U.S. at 766 n.6. Yet that is what the court does today, presumably so that the agency can recount in greater detail the arguments it found unconvincing the first time. Requiring such extra verbiage is neither useful nor permitted. *See Vt. Yankee*, 435 U.S. at 524 (noting that judges are "not free to impose" additional procedural requirements on agencies).

### III

The agency also reasonably held that Ojo was ineligible for withholding of removal because he was convicted of a "particularly serious crime," given the nature of the crime, the number of victims, and the damage inflicted. 8 U.S.C. § 1231(b)(3)(B)(ii).[8]  In doing so, the

---

[8] *See* Cert. Admin. R. at 6 ("[T]he respondent (1) had been convicted of conspiracy to commit wire fraud and conspiracy to possess with intent to use five or more false identification documents; (2) had committed fraud

14

agency made no error. Courts—including ours—have routinely upheld the agency's determination that wire fraud is a particularly serious crime. *See, e.g., Doe v. Sessions*, 709 F. App'x 63, 67-68 (2d Cir. 2017); *Smatsorabudh v. Barr*, 812 F. App'x 432, 433-34 (9th Cir. 2020); *Nkomo v. Attorney General*, 930 F.3d 129, 134-35 (3d Cir. 2019); *Jeudy v. Attorney General*, 762 F. App'x 594, 598-99 (11th Cir. 2019). The statute identifies several crimes as *per se* particularly serious that do not appear to be more serious than wire fraud. *See, e.g.*, 8 U.S.C. § 1101(a)(43)(Q) (failure to appear for service of sentence); *id.* § 1101(a)(43)(T) (failure to appear pursuant to a court order to answer to or dispose of a felony). It is not unreasonable to conclude that wire fraud is at least as serious as these crimes that the statute itself considers *per se* particularly serious. I do not see how the agency erred in determining that Ojo's crime of wire fraud was "particularly serious" under 8 U.S.C. § 1231(b)(3)(B)(ii).

Yet the court again vacates the agency's decision for reasons unrelated to the substance of that decision.

The court first asserts that the agency did not follow its own precedent. Specifically, the court faults the agency for not adhering to the procedures outlined in *Matter of N-A-M-*, 24 I. & N. Dec. 336 (BIA 2007), which the court interprets as requiring a strict two-step analysis.[9] "The issue here," the court says, "is not whether the agency

---

against 11 victims; and (3) was ordered to pay the victims more than $92,000 in restitution."); *see also id.* at 50.

[9] *See ante* at 27 ("We conclude that the agency failed to apply the correct legal standard at step one of the [*Matter of N-A-M-*] analysis in its determination that Ojo's conviction involved a particularly serious crime."); *id.* at 29 ("[T]he indictment was not then analyzed under step one;

can reach such a conclusion, but rather its failure to follow its own precedent which sets forth the framework under which such a determination should be made." *Ante* at 31.

The court has apparently decided to police the way the BIA interprets and applies its own precedents, even if the BIA's conclusions are supported by substantial evidence and consistent with the INA. This novel procedural requirement is yet another departure from precedent. Just as we defer to an agency's reasonable interpretation of its own regulations,[10] we defer to the agency's interpretation of its own precedents. As we have said, "[w]e must accord deference to an agency's reasonable interpretation of its own precedents." *Li Yong Zheng*, 416 F.3d at 131 (quoting *Global Crossing Telecomms., Inc. v. FCC*, 259 F.3d 740, 746 (D.C. Cir. 2001), and citing *Seminole Rock*, 325 U.S. at 414). Indeed, "[w]hat is generally true in administrative law remains true here: An agency's interpretation of its own precedents receives considerable deference—a form of deference that applies in equal measure to the BIA's interpretation of its precedents." *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008) (citations omitted) (citing *Li Yong Zheng*, 416 F.3d at 131, and *Auer*, 519 U.S. at 461). The court today casts that principle aside in favor of quibbling micromanagement of the agency's adjudicatory procedure.

_____

rather, the quote appears to be—along with the reference to the judgment of conviction and restitution order—part of the 'totality of the circumstances' analysis at step two."); *id.* at 30 ("[T]he BIA skipped immediately to its explanation for agreeing with the IJ's step-two analysis, without analyzing step one at all.").

[10] *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019); *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

The agency's interpretation and application of *Matter of N-A-M-* in this case was reasonable. The court apparently understands *Matter of N-A-M-* to require a rigid two-step procedure involving "an elements-only examination" of the crime at step one, after which the BIA may proceed to consider the particular circumstances of the applicant's offense. *Ante* at 31. This two-step procedure is based on the court's own interpretation of *Matter of N-A-M-*. The opinion in *Matter of N-A-M-* itself does not unambiguously require such a procedure.[11] In fact, *Matter of N-A-M-* expressly rejects

[11] In *Matter of N-A-M-*, the BIA said that "[o]n some occasions, we have focused exclusively on the elements of the offense, i.e., the nature of the crime" but "we have generally examined a variety of factors and found that the 'consideration of the individual facts and circumstances is appropriate.'" 24 I. & N. Dec. at 342 (quoting *Matter of L-S-*, 22 I. & N. Dec. 645, 651 (BIA 1999)). The BIA elaborated that "[i]f the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence," but if "the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information." *Id.* It is possible to interpret this language, as the court does, to require strict procedural adherence to a two-step procedure. But it is also possible and reasonable to understand the opinion as stating that the nature of the offense may exclude clearly non-serious crimes based on the elements; therefore, sometimes the elements of the offense will be determinative and in other cases the BIA will rely on individual circumstances. *See id*. ("On some occasions, we have focused exclusively on the elements of the offense, i.e., the nature of the crime. However, we have generally examined a variety of factors and found that the consideration of the individual facts and circumstances is appropriate.") (internal quotation marks and citation omitted). In other words, *Matter of N-A-M-* describes alternative approaches but does not mandate a rigid two-

the sort of categorical approach the court adopts here. *See* 24 I. & N. Dec. at 344 (noting that no "decision of which we are aware, has ever suggested that the categorical approach, used primarily in determining removability, is applicable to the inherently discretionary determination of whether a conviction is for a particularly serious crime"). Other circuit courts, when reviewing decisions of the BIA, have not imposed such a procedure.[12] The Ninth Circuit has said it is enough if the record reveals that "the IJ and BIA did consider the nature of the conviction, the circumstances and underlying facts of the conviction, and the type of sentence imposed when reaching the conclusion that [the] conviction constituted a particularly serious crime," without the need to follow a specific formula. *Anaya-Ortiz v. Holder*, 594 F.3d 673, 680 (9th Cir. 2010) (internal quotation marks and alteration omitted). Even when the agency does not expressly follow the supposed first step of *Matter of*

---

step procedure—a procedure that the BIA itself did not even follow in *Matter of N-A-M-*.

[12] The court quotes the Third Circuit for support for the idea that *Matter of N-A-M-* requires a rigid two-step procedure that reviewing courts should police. *See Luziga v. Attorney General*, 937 F.3d 244, 254 (3d Cir. 2019) ("[T]he agency should first determine whether the elements of Luziga's offense potentially fall within the ambit of a particularly serious crime. Only then may it proceed to consider the facts and circumstances particular to Luziga's case."). To the extent *Luziga* requires such a procedure, the Third Circuit appears to have originated the idea. However, we have previously explained that *Luziga* did not create a general rule but rather reversed the agency only because "the agency misapprehended the offense elements before deciding that it was appropriate to weigh factors." *Mbendeke v. Garland*, 860 F. App'x 191, 194 n.1 (2d Cir. 2021); *see also Bare v. Barr*, 975 F.3d 952, 963 (9th Cir. 2020) (explaining that in *Luziga*, the agency erroneously "listed as 'elements' specific offense characteristics such as loss amount which were not elements of the offense") (internal quotation marks omitted).

*N-A-M-*—that is, when "[n]either the IJ nor the BIA listed the elements of [the offense] in their written decisions, neither explicitly discussed the elements of the crime, and neither explicitly stated that the crime is potentially particularly serious"—the Ninth Circuit will affirm because as long as "the IJ or BIA noted facts which correspond to all the elements of the offense as weighing in favor of the crime being particularly serious, we see no reason to put form over substance." *Bare*, 975 F.3d at 962-63.

Our court has previously followed the Ninth Circuit and has declined to "put form over substance by requiring an explicit consideration of the elements of the offense" when the agency applies *Matter of N-A-M-*. *Mbendeke*, 860 F. App'x at 193-94 (internal quotation marks and alteration omitted). [13] Rather, we said that when the agency's decision "reflects an implicit conclusion that th[e] elements potentially bring the offense within the ambit of a particularly serious crime," that is enough for "a threshold determination based on the elements of the offense," even "assuming that the agency is required to conduct" such an inquiry under *Matter of N-A-M-*. *Id.*

In *Mbendeke*, the petitioner claimed—as Ojo does here—that "the IJ skipped immediately to the second step" of *Matter of N-A-M-*'s two steps. [14] Though the IJ listed the elements of the offense of marriage fraud, it did not show how, based on the elements alone, the

---

[13] "Although we decided [*Mbendeke*] by nonprecedential summary order, rather than by opinion, our '[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.'" *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) (quoting Order dated June 26, 2007, adopting 2d Cir. Local R. 32.1).

[14] Petitioner's Br. 13, *Mbendeke v. Garland*, 860 F. App'x 191 (2d Cir. 2021) (No. 19-1766), ECF No. 67.

crime of marriage fraud was potentially a particularly serious crime.[15] Unlike wire fraud, which has repeatedly been recognized as a particularly serious crime, [16] marriage fraud has not been so recognized. Still, we rejected Mbendeke's claim. We reasoned that because the agency "stated the threshold question and the elements of the offense of conviction before considering individual factors … the decision thus reflects an implicit conclusion that those elements potentially bring the offense within the ambit of a particularly serious crime." *Mbendeke*, 860 F. App'x at 193. In other words, we recognized that the "elements-only" analysis of *Matter of N-A-M-* can be "implicit," especially because we assume that when the agency states a legal standard at the beginning of a paragraph, it must have applied that standard to reach its conclusion.

Given that wire fraud has consistently been recognized as a particularly serious crime and the agency here "stated the threshold question," a consistent approach would require us to hold that the agency's decision "reflects an implicit conclusion that those elements potentially bring the offense within the ambit of a particularly serious crime." *Id.* [17] The agency followed a reasonable interpretation of

---

[15] Cert. Admin. R. at 60-61, *Mbendeke v. Garland*, 860 F. App'x 191 (2d Cir. 2021) (No. 19-1766), ECF No. 31.

[16] *See, e.g., Doe*, 709 F. App'x at 67-68; *Smatsorabudh*, 812 F. App'x at 433-34; *Nkomo*, 930 F.3d at 134-35; *Jeudy*, 762 F. App'x at 598-99.

[17] The court attempts to distinguish *Mbendeke* on the ground that, in this case, "the IJ did not separately state the elements before considering the individual factors." *Ante* at 33 n.12. The court would apparently be satisfied if the agency had "separately state[d] the elements," *id.*, even without a separate analysis of why the elements "bring the offense within the ambit of a particularly serious crime." *Matter of N-A-M-*, 24 I. & N. Dec. at 342. So

*Matter of N-A-M-*. The agency concluded, "based on the nature of the convictions and the underlying circumstances of the case," that Ojo "had been convicted of a particularly serious crime" because he (1) was "convicted of conspiracy to commit wire fraud and conspiracy to possess with intent to use five or more false identification documents," (2) victimized eleven people, and (3) had to pay "more than $92,000 in restitution." Cert. Admin. R. at 6. The IJ noted that Ojo's "conviction is not *per se* a particularly serious crime" but it was potentially so because Ojo "was convicted of conspiracy to commit wire fraud and conspiracy to possess with intent to use [un]lawfully five or more false identification documents." *Id.* at 50-51. Ultimately, "[b]ased on the totality of the circumstances, and the seriousness of the fraud that the Respondent committed," the IJ found "his conviction a particularly serious crime." *Id.* at 51.

This analysis does not contradict *Matter of N-A-M-* but considers all the factors the BIA identified in that case. Even if today's panel would interpret *Matter of N-A-M-* in a more formalistic, procedural way, we owe "considerable deference" to the "agency's interpretation of its own precedents." *Aburto-Rocha*, 535 F.3d at 503. The court suggests that it is affording due deference to the agency's

---

the court's decision is not based on the agency's reasoning, but the lack of "robotic incantations" of the elements. *Xiao Ji Chen*, 471 F.3d at 336 n.17. We do not require "robotic incantations." *Id.* The court separately claims that the IJ "misapprehend[ed] the elements by classifying the offense as a 'crime against persons.'" *Ante* at 33 n.12. But the agency's use of this phrase does not indicate that it misapprehended the elements of Ojo's crimes by, for instance, erroneously "list[ing] as 'elements' specific offense characteristics such as loss amount which were not elements of the offense." *Bare*, 975 F.3d at 963 (internal quotation marks omitted). It is implausible that the IJ did not understand the elements of wire fraud and possession of false identification documents.

interpretation of its own precedent and is "simply … requiring the agency to follow its own interpretation of its precedent, which was clearly set forth in *In re N-A-M-*." *Ante* at 33. Yet the interpretation of *Matter of N-A-M-* that the court imposes on the BIA today was evidently not so "clearly set forth" as to be apparent to a prior panel of this court, to panels of other courts of appeals, and to the BIA itself. *Id*. Given these interpretive disagreements, what is "clearly" apparent is that the court is imposing its own interpretation of *Matter of N-A-M-* on the agency despite the evident ambiguity. *Id*.

The court offers a second reason for vacating the agency's reasonable judgment. It fixates on the IJ's use of the phrase "crime against persons" and argues that the phrase "infected" the agency's whole analysis, even though the BIA did not use the phrase in its reasoning. *Id.* at 29. The government suggests that the IJ used the phrase colloquially, to emphasize that Ojo's economic crimes should be taken seriously because those crimes have real victims. *See* Respondent's Br. 33. As the First Circuit has explained of identity theft, "although violence was indeed not at issue here, there were real victims: the subject of the identity theft, whose social security number and identity were stolen, and the government, which was defrauded of at least \$176,000." *Valerio-Ramirez v. Sessions*, 882 F.3d 289, 292 (1st Cir. 2018). In another recent case, the BIA similarly concluded that a conviction for conspiracy to commit wire fraud was particularly serious in part because "the respondent's criminal actions harmed 10 or more real people." *Matter of F-R-A-*, 28 I. & N. Dec. 460, 469 (BIA 2022). The presence of victims is a legitimate consideration when weighing whether a crime is particularly serious. *See Nethagani v. Mukasey*, 532 F.3d 150, 155 (2d Cir. 2008) (noting that the agency properly considers "whether the type and circumstances of the crime

indicate that the alien will be a danger to the community") (quoting *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982)).

The substance of the IJ's analysis was unobjectionable. Even if the IJ incorrectly used a term of art, that would not "infect" the entirety of the agency's analysis because that single sentence was inessential. The IJ used the phrase "crime against persons" only *once*, and his analysis did not rely on that one sentence. Cert. Admin. R. at 50. A "particularly serious crime" does not need to be a "crime against persons" in the technical sense or involve any sort of violence. *See, e.g.*, *Matter of R-A-M-*, 25 I. & N. Dec. 657, 662 (B.I.A. 2012) ("[W]hile an offense is more likely to be considered particularly serious if it is against a person, it does not have to be violent to be a particularly serious crime."). One could delete that single sentence from the IJ's opinion and be left with a complete, reasonable analysis of the "totality of the circumstances" surrounding Ojo's crimes that properly concludes the crimes were particularly serious. Cert. Admin. R. at 50-51.

The BIA's opinion confirms that the phrase was inessential; the BIA did not repeat the phrase in its analysis but affirmed the IJ's decision nonetheless.[18] The idea that the agency would reconsider its whole analysis after this court corrects the IJ's terminology is not credible. Again, we "*must* uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Ming Dai*, 141 S. Ct. at 1679 (internal quotation marks omitted and emphasis

---

[18] *See* Cert. Admin. R. at 6 ("[T]he Immigration Judge examined the individualized characteristics of the respondent's offenses and determined that—based on the nature of the convictions and the underlying circumstances of the case—[Ojo] had been convicted of a particularly serious crime.").

added), and here it is apparent that the agency considered the nature of the crime, the number of victims, and the damage inflicted when categorizing Ojo's crimes as particularly serious. That was a reasonable decision, and we ought to leave it in place.

## IV

Additionally, the agency concluded that Ojo was not eligible for relief under the Convention against Torture ("CAT") because Ojo failed to demonstrate that he would more likely than not be tortured in Nigeria.

The agency's decision was reasonable and supported by substantial evidence in the record. Ojo "testified that he would lose business as a result of his conviction for a fraud crime," and the IJ correctly explained that "any such harm rises to mere private discrimination, not torture." Cert. Admin. R. at 52. Ojo "testified that he could not find another job," but that was "because the unemployment rate is high, not due to a denial of work based on his criminal history." *Id.* Finally, Ojo "argued that the government would arrest, detain, and torture him for being a criminal deportee" and "testified that he knew someone tortured in Nigeria after refusing to pay police to release him." *Id.* The IJ rejected this last argument because "[i]t is speculative that the same would happen to the Respondent." *Id.* The IJ noted that to establish entitlement to CAT relief, there must be "sufficient grounds for determining that *a particular person* would be in danger of being subjected to torture upon his return to that country. *Specific* grounds must exist that indicate the individual would be *personally* at risk." *Id.* (emphasis added) (quoting *Matter of J-E-*, 23 I & N Dec. 291, 303 (BIA 2002)). The IJ explained that Ojo did not make that showing:

24

> The Respondent has not proffered any circumstances that indicate he has *specific features* that put him at higher risk of being harmed by the government than *any other criminal in Nigeria*, let alone established his profile will be "more likely than not" to subject him to torture.

*Id.* (emphasis added).

That decision was well-supported and consistent with our case law. We have repeatedly upheld the denial of CAT relief when an applicant relies on general or anecdotal evidence but "presents no particularized evidence" showing that the applicant *himself* is more likely than not to be tortured. *Mu Xiang Lin v. DOJ*, 432 F.3d 156, 158 (2d Cir. 2005). We have said that "in the absence of a showing that someone in the petitioner's *particular circumstances* is more likely than not to be tortured … CAT relief is not warranted." *Lin Zhong v. DOJ*, 480 F.3d 104, 126 n.26 (2d Cir. 2007) (emphasis added).

Yet the court reverses the agency's reasonable conclusion because the agency did not specifically address one piece of evidence: the "Ugochukwu Declaration." *Ante* at 36; *see* Cert. Admin. R. at 857-67. Because neither the IJ nor the BIA specifically mentioned this declaration in an opinion, the court vacates and remands the entire decision. *Ante* at 46-47.

This vacatur is error. We have repeatedly held that the agency is not required to "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 169 (2d Cir. 2008) (quoting *Zhi Yun Gao v. Mukasey*, 508 F.3d 86, 87 (2d Cir. 2007)); *see also Xiao Ji Chen*, 471 F.3d at 341 ("[T]he Immigration Judge need not discuss each and every piece of evidence presented by an asylum applicant when rendering a decision."); *id.* at 336 n.17 ("[W]e presume that an IJ has

taken into account all of the evidence before him, unless the record compellingly suggests otherwise. Accordingly, the IJ need not engage in 'robotic incantations' to make clear that he has considered and rejected a petitioner's proffered explanation."); *Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) ("[W]e reject any implication that … where the BIA has given reasoned consideration to the petition, and made adequate findings, it must expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner.") (internal quotation marks omitted); *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) ("We readily acknowledge that the agency does not commit an 'error of law' every time an item of evidence is not explicitly considered.").

Other circuits have also consistently held that "[w]here, as here, the [agency] has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented." *Martinez v. INS*, 970 F.2d 973, 976 (1st Cir. 1992).[19] "Because there is no evidence that the IJ failed to consider

---

[19] *See Tan v. Attorney General.*, 446 F.3d 1369, 1374 (11th Cir. 2006) (holding that when the agency "has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented"); *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 425 n.10 (3d Cir. 2005) ("[T]he Immigration Judge need not discuss each and every piece of evidence presented by an asylum applicant when rendering a decision, as long as that decision is substantially supported."); *Morales v. INS*, 208 F.3d 323, 328 (lst Cir. 2000) ("This court has held that each piece of evidence need not be discussed in a decision.") (citing *Martinez*, 970 F.2d at 976); *Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996) ("We do not require the BIA to specifically address every piece of evidence put before it."); *Ghaly v. INS*,

[Ojo's] documentary evidence" apart from the lack of specific mention of one item of evidence, we ought to "accept the IJ's general statement that he considered all the evidence before him." *Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006); *see also* Cert. Admin. R. at 47 (noting that the IJ "familiarized himself with the entire record of proceedings").

But even if we were to fail to credit the IJ's representation that he reviewed the entire record, the agency did not need to address the Ugochukwu Declaration expressly for a separate and independent reason: it added nothing to the arguments the agency already

---

58 F.3d 1425, 1430 (9th Cir. 1995) ("[T]he Board cannot be expected to explain how much weight it places on every piece of relevant evidence. Nor need the Board refer to each exhibit."); *Casalena v. INS*, 984 F.2d 105, 107-08 (4th Cir. 1993) ("That the BIA did not explicitly discuss [the petitioner's] employment history, his homeownership, or the letters written on his behalf does not constitute reversible error. The BIA might simply have found those factors insufficiently significant to merit individual mention … We conclude that the BIA sufficiently explained its decision to show that it has heard and thought and not merely reacted."); *Vergara-Molina v. INS*, 956 F.2d 682, 685 (7th Cir. 1992) ("The Board need not … mention every relevant fact in its opinion."); *Becerra-Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987) (noting that the agency "has no duty to write an exegesis on every contention. What is required is merely that it consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted") (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142-43 (5th Cir. 1984)); *Alvarez-Madrigal v. INS*, 808 F.2d 705, 706 (9th Cir. 1987) (explaining that while the BIA must "show that it ha[s] considered" the factors relevant to a petitioner's claims, it "need not set forth its reasons for finding that a factor does not support" a grant of relief); *Villanueva-Franco v. INS*, 802 F.2d 327, 330 (9th Cir. 1986) ("[A]ll that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided.").

considered and rejected. The IJ found Ojo's allegations that he would be tortured "speculative" because Ojo provided only *general* and not *specific* evidence of the alleged harm. Ojo failed to show that "he has *specific* features that put him at higher risk of being harmed by the government *than any other criminal in Nigeria*." Cert. Admin. R. at 52 (emphasis added). The Ugochukwu Declaration, even assuming it should be credited in full, says nothing about Ojo's specific features. It asserts only that criminal deportees, in general, are arrested and subjected to "deplorable" and "brutal" prison conditions. Cert. Admin. R. at 859-60. Putting aside that we have rejected this precise sort of CAT claim,[20] the Ugochukwu Declaration simply repeats the argument Ojo himself made: that Ojo will be subjected to mistreatment "because he will be a criminal deportee." Cert. Admin. R. at 859. The IJ fully responded to this argument by finding it unduly speculative in the absence of evidence that Ojo's individual circumstances makes it more likely than not that he *in particular* will be subjected to mistreatment amounting to torture. The Ugochukwu Declaration does nothing to call the IJ's analysis into question.[21]

---

[20] *See Pierre v. Gonzales*, 502 F.3d 109, 116 (2d Cir. 2007) (holding that the "indefinite detention of criminal deportees … in light of the prevailing prison conditions" does not amount to torture).

[21] The court criticizes the statement that the expert declaration added nothing to the case as being "in the dissent's *own judgment*." *Ante* at 38 n.13. The point seems to be that it is a violation of *Chenery* to replace the agency's judgment with our own. *See ante* at 51 ("The dissent supplies that exact type of *ex post* rationalization."). This is a strange criticism. First, my characterization of the expert report is a determination about its relationship to the agency's own analysis, not some theory of my own. As the court acknowledges, we must "uphold even a decision of less than ideal clarity if the agency's path may be reasonably discerned" from its

We review an agency's factual determinations for substantial evidence and accordingly "must defer to the factfinder's findings based on 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Majidi v. Gonzales*, 430 F.3d 77, 81 (2d Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). That is not a judge-made rule; Congress by statute has instructed that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The scope of review under the substantial evidence standard is therefore "exceedingly narrow."

reasoning. *Id.* at 12-13 (internal quotation marks omitted) (quoting *Ming Dai*, 141 S. Ct. at 1676). The agency's reasoning demonstrates that the Ugochukwu Declaration contains no evidence that would affect the agency's decision. The agency said that Ojo failed to provide evidence about his particular circumstances, and the Ugochukwu Declaration includes no evidence about Ojo's particular circumstances. The declaration therefore provides no additional argument or factual information relevant to the agency's decision. Second, whenever we evaluate the agency's findings of fact, we apply the "deferential substantial evidence standard." *Id*. at 12. Under that standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). So we must decide whether the evidence to which Ojo points—here, the Ugochukwu Declaration—compels the conclusion that he is more likely than not to be tortured if returned. Consistent with the rest of its opinion, the court ignores the standard of review and pretends that we may vacate the agency's decision based on a procedural failure to consider evidence that does not undermine the agency's factual determinations. After all that, it is quite something for the court to accuse the *dissent* of departing from the applicable legal standards. Given the court's relentless second-guessing of the immigration courts' determinations, there is little question whether it is the court or the dissent that seeks to "intrude upon the domain which Congress has exclusively entrusted to an administrative agency." *Chenery*, 318 U.S. at 88.

29

*Singh v. Garland*, 11 F.4th 106, 113 (2d Cir. 2021) (quoting *Mu Xiang Lin v. DOJ*, 432 F.3d 156, 159 (2d Cir. 2005)).

According to the court, the substantial evidence standard "is inapplicable" because it thinks the agency's decision was not adequately explained. *Ante* at 39. That is a remarkable assertion, given that the statute prescribing the substantial evidence standard contains no such exception.

When the court says that the agency's decision was not adequately explained—thereby excusing us, in the court's view, from applying 8 U.S.C. § 1252(b)(4)(B)—it means that the IJ "fail[ed] to provide any explanation regarding the expert declaration." *Id.* at 38. We have recognized a general principle that the agency must provide a "minimum level of analysis" to ensure "judicial review is … meaningful." *Poradisova*, 420 F.3d at 77. But today's opinion applies that principle to the agency's evaluation of every individual piece of evidence. That is inconsistent with the well-established rule that an IJ need not "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Jian Hui Shao*, 546 F.3d at 169 (quoting *Zhi Yun Gao*, 508 F.3d at 87).

The court does not dispute that its decision conflicts with this rule. Instead, it again excuses itself from applying the applicable rules by asserting that this rule also does not apply to this case. In particular, the court claims that "[n]either the government nor the dissent cites to any case where the Supreme Court or this Court (or any other appellate court) has ever upheld a BIA decision to reject a claim for relief where the applicant's testimony was found to be credible and the applicant was denied such relief for lack of corroboration, but neither the IJ nor the BIA addressed an unrebutted

30

expert declaration that corroborated the applicant's claim." *Ante* at 49-50.

In fact, there are several such cases.[22] The court is simply wrong that our court's statements about not needing to address every piece of evidence have been "generally" employed "in situations

[22] For example, in *Hernandez v. Lynch*, 644 F. App'x 61 (2d Cir. 2016), the petitioner argued to the BIA that "the IJ erred in not considering his most relevant piece of objective evidence—the expert affidavit" and that the "only consideration the IJ gave [the] relevant expert testimony was to mark it into evidence." Petitioner's Br. 18-19, *Hernandez v. Lynch*, 644 F. App'x 61 (2d Cir. 2016) (No. 14-1770), ECF No. 65. Without discussing the contents of the expert report, the BIA rejected this argument because "the Immigration Judge is not required to discuss every single piece of evidence in the record and provide a detailed discussion of every contention raised." Cert. Admin. R. at 69, *Hernandez v. Lynch*, 644 F. App'x 61 (2d Cir. 2016) (No. 14-1770), ECF No. 55. On appeal, we affirmed the BIA, holding that "we find no error in the IJ's failure to explicitly discuss the report of Hernandez's expert witness." *Hernandez*, 644 F. App'x at 63 (citing *Xiao Ji Chen*, 471 F.3d at 338 n.17). Similarly, in *Xiu Yun Zheng v. BIA*, 191 F. App'x 42 (2d Cir. 2006), the petitioner claimed that the BIA erred because it "uncritically … relied on reports of claims by the Chinese government that it doesn't forcibly sterilize its citizens" while ignoring "the testimony and affidavit of … a recognized expert on coercive family planning, that directly addressed these denials." Petitioner's Br. 8, *Xiu Yun Zheng v. BIA*, 191 F. App'x 42 (2d Cir. 2006) (No. 05-1910), 2005 WL 5338129. We rejected this argument because "this Court has rejected any implication that where the BIA has given reasoned consideration to the petition, and made adequate findings, it must expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Xiu Yun Zheng*, 191 F. App'x at 45 (internal quotation marks omitted). In that case, the IJ had even found that the petitioner "had established through subjective and objective evidence that she had a well-founded fear of future persecution if returned to China," and the BIA did not dispute that her fear of future persecution was subjectively genuine. *Matter of Zheng*, No. A78-289-452, slip op. at 1-2 (B.I.A. Mar. 28, 2005).

involving a failure to refute every argument or piece of evidence relating to a petitioner's credibility assessment." *Ante* at 42.[23] But

[23] In just a few recent examples, we have applied this principle to reject the contention that the agency "mischaracterized the record when [it] stated that [the petitioner] failed to indicate the nature of the political opinion of her student group," *Diaz Carranza v. Garland*, 859 F. App'x 594, 595-96 (2d Cir. 2021) (citing *Xiao Ji Chen*, 471 F.3d at 336 n.17, and *Mendez*, 566 F.3d at 323); to affirm the agency's denial of an alien's application for cancelation of removal following his conviction for reckless assault of a child although the agency "did not explicitly reference a medical report," *Cruz v. Wilkinson*, 848 F. App'x 14, 16 (2d Cir. 2021) (citing *Jian Hui Shao*, 546 F.3d at 169, and *Xiao Ji Chen*, 471 F.3d at 336 n.17); to affirm the BIA's denial of the petitioner's motion to remand because "the BIA was not required to expressly address newly promulgated religious regulations discussed in a report Wang submitted on appeal," *Yi Lun Wang v. Garland*, 857 F. App'x 679, 682 (2d Cir. 2021) (citing *Jian Hui Shao*, 546 F.3d at 169); to resolve an ambiguity as to the incident of "public intoxication" on which the agency relied in the agency's favor, *Medrano Medrano v. Garland*, 852 F. App'x 586, 588 (2d Cir. 2021) (citing *Mendez*, 566 F.3d at 323, and *Jian Hui Shao*, 546 F.3d at 169); to affirm the agency's decision because even though "the agency may not have summarized the criminal record with perfect accuracy," these mischaracterizations were not "serious," *id.* (citing *Mendez*, 566 F.3d at 323); to reject the argument that "the agency overlooked circumstances surrounding [the petitioner's] criminal charges," *id.* (citing *Jian Hui Shao*, 546 F.3d at 169); to hold that the agency "did not err in failing to consider[, among other things,] an expert affidavit" when it denied relief under the CAT because the agency concluded that the evidence did not show that the petitioner "would 'more likely than not' be tortured upon his return" to El Salvador, *Coreas-Alvarado v. Barr*, 838 F. App'x 594, 598 (2d Cir. 2020) (citing *Xiao Ji Chen*, 471 F.3d at 336 n.17, and *Jian Hui Shao*, 546 F.3d at 169); to rule that the agency's hardship determination did not totally overlook or seriously mischaracterize material facts because "the agency was not required to explicitly consider evidence of the number of asthma deaths in Sri Lanka," *Amarasinghe v. Barr*, 831 F. App'x 14, 15 (2d Cir. 2020) (citing *Zhi Yun Gao*, 508 F.3d at 87, and *Xiao Ji Chen*, 471 F.3d at 336 n.17); to affirm the agency's holding that the petitioner "did not establish a pattern or practice

even if cases reflecting a specific fact pattern did not exist, we would still be required to apply the principles articulated in *Ming Dai, Jian Hui Shao, Zhi Yun Gao, Xiao Ji Chen*, and *Mendez*. These decisions did not purport to limit the principles governing our review of agency decisions to "situations involving … a petitioner's credibility assessment." *Id*. That distinction has no basis in our case law.[24]

---

of persecution of Tamils and returning asylum seekers in Sri Lanka" because we "presume that the agency has taken into account all of the evidence before it, unless the record compellingly suggests otherwise," *Balasegarathum v. Barr*, 827 F. App'x 90, 94 (2d Cir. 2020) (alterations omitted) (quoting *Xiao Ji Chen*, 471 F.3d at 336 n.17); to reject, in the context of lack of notice of an in absentia removal order, the contention that "the agency's proceedings violated due process because the IJ did not explicitly discuss some of the relevant factors," *Da Silva v. Barr*, 827 F. App'x 52, 56 (2d Cir. 2020) (citing *Zhi Yun Gao*, 508 F.3d at 87, and *Xiao Ji Chen*, 471 F.3d at 336 n.17); and to reject the contention that "the agency failed to consider [a] psychological evaluation merely because it did not explicitly consider it." *Roldan v. Barr*, 820 F. App'x 77, 79 (2d Cir. 2020) (citing *Mendez*, 566 F.3d at 323). Moreover, *Hernandez* and *Xiu Yun Zheng,* mentioned above, applied this principle in the context of the agency's consideration of expert evidence for asylum, withholding of removal, and CAT claims. We have applied this principle hundreds of times, and not only in situations "relating to a petitioner's credibility assessment." *Ante* at 42.

[24] I further note that it is unclear why the court thinks that Ojo "was denied such relief for lack of corroboration." *Ante* at 50. The agency rejected Ojo's evidence because it was not probative, not because it was uncorroborated. Even if Ojo's evidence related to his claims of torture were corroborated and deemed credible, that evidence still would not suffice to show that he is more likely than not to be tortured. As the agency explained, that evidence does not show that Ojo in particular is more likely than any other criminal in Nigeria to be subjected to serious mistreatment. We have repeatedly upheld the denial of CAT relief when an applicant relies on general or anecdotal evidence but presents no particularized evidence

If the court wants to reconsider our precedents holding that an applicant must produce evidence about his particular circumstances and that harsh prison conditions do not amount to torture, it should say so. But there is no justification for vacating the agency's decision based on yet another purported procedural error and remanding for the agency to add yet more magic words.

*          *          *

The court's decision is simultaneously nitpickingly narrow and dramatically sweeping. In arrogating to itself the power to vacate agency decisions whenever it objects to a single jot or tittle in the agency's opinions, the court alters the relationship between agencies and reviewing courts. In doing so, the court departs from the principle that "a reviewing court is 'generally not free to impose' additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel." *Ming Dai*, 141 S. Ct. at 1677 (quoting *Vt. Yankee*, 435 U.S. at 524). The court's high-minded platitudes about "fairness" and "public confidence" do not grant it permission to establish new procedural requirements. *Ante* at 48. It is for Congress, not the courts, to determine the procedures for "reviewing immigration decisions where an individual's ability to legally remain in the United States hangs in the balance." *Id*. This procedure is governed by statute, and we do not have the authority to add additional procedures not mandated by that statute or by the Constitution. *Vt. Yankee*, 435 U.S. at 524. The court's statement that "we demand no less" in immigration proceedings than in cases not governed by the INA is an

---

showing that the applicant himself is more likely than not to be tortured. *See Mu Xiang Lin*, 432 F.3d at 158; *Lin Zhong*, 480 F.3d at 126 n.26.

admission that the court is inventing its own procedural requirements regardless of what the INA requires. *Ante* at 48. I dissent.